497 A.2d 1351

**Anna FAUST, Appellant,**

**v.**

**Joseph L. MESSINGER, Thomas Snyder and R. Benay Snyder.**

Superior Court of Pennsylvania.

Argued May 23, 1985.

Filed Aug. 23, 1985.

Dwight L. Danser, Easton, for appellant.

Joel M. Scheer, Easton, for appellees.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

HESTER, Judge:

Appellant, a grandmother, has appealed from an order which denied her visitation rights with her grandson following his adoption. Said order also refused to reopen the proceeding which had resulted in his adoption by appellees. Her claims are based on: 1) the fact that the boy's father killed his wife (the boy's mother and the appellant's daughter), 2) the allegedly intentional and malicious acts of appellees in withholding from her the child's whereabouts as well as the pendency of the adoption proceeding, 3) the Custody and Grandparents Visitation Act [CGVA], 23 P.S. § 1001 *et seq.*, which permits a grandparent to seek visitation of a grandchild under certain circumstances applicable to appellant, and 4) her lack of notice of the adoption proceeding which she claims violated procedural due process requirements. Despite these factors, we affirm.

## BACKGROUND

Michael Snyder was born on October 6, 1979, to Joseph Messinger and Sheila Messinger. Joseph Messinger killed Sheila on June 1, 1982, and was duly convicted and sentenced to serve five to fifteen years for the aggravated manslaughter of his wife. In late 1982, Michael, then three years old, was adopted by the Snyders in a proceeding wherein Joseph Messinger relinquished his parental rights to the boy.

Approximately a year and a half later, the appellant, Anna Faust, Sheila Messinger's mother, learned of her grandson's whereabouts and the fact of his adoption. She filed both a complaint for custody and a petition to intervene in the adoption *nunc pro tunc*. At the close of the pleadings, the matters were consolidated and upon motion for judgment on the pleadings, the court dismissed her claim for custody and her request to intervene in the adoption proceeding. She has appealed from the order of dismissal.

## ADOPTION

Appellant argues that appellees maliciously hid the child's whereabouts from her, intentionally concealed from the adoption court her known interest in her grandson's custody, and failed to notify her of the adoption proceeding. Coupled with these inequities, appellant claims that the adoption violated procedural due process requirements by terminating her rights without giving her notice of the hearing. The CGVA entitles a grandparent to seek visitation rights to a child whose parent is deceased, 23 P.S. § 1012, and an independent right to seek visitation of a child who has resided with the grandparent for twelve months or more, 23 P.S. § 1014, both of which grounds apply in this case. An adoption decree terminates the visitation rights of a grandparent regardless of their basis, 23 P.S. § 1015, so appellant claims a due process right to notice of the hearing which terminated her rights.

■ She bases this claim on *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), which

holds that procedural due process entitles a person whose rights may be affected by an action to be heard, and to enjoy that right, he must be notified of the proceedings. In addition, when a legally protected interest is created by statute, the provisions of the statute must be examined to determine whether or not due process applies. *Ingram v. O'Bannon*, 534 F.Supp. 385 (E.D.Pa.1982). It is axiomatic that the due process clause does not create the right but protects the right created by statute or other legal basis.

In this case, appellant does not rely on a right created by the Adoption Act, 23 Pa. § 2101 *et seq.*, conceding that as a grandparent she was not entitled to notice under the provisions of the Adoption Act. Her claimed entitlement comes from the CGVA, which permits a grandparent to seek visitation but terminates grandparental visitation rights upon adoption. Two reasons compel us to deny the appellant's due process argument.

First, it amounts to a claim that the CGVA is unconstitutional for failing to establish notice provisions which satisfy due process requirements. Such a claim is barred because it does not comply with the provisions of Pa.R. Civ.P. 235 and Pa.R.A.P. 521, requiring notice to the attorney general of a constitutional challenge to a statute. *See Matter of Adoption of Christopher P.*, 480 Pa. 79, 90, 389 A.2d 94, 100 (1978).

Second, the entitlement claimed by appellant does not amount to one which must be protected by the due process clause. It is an entitlement only to *seek* visitation which will be granted or denied as the best interests of the child dictate, 23 P.S. §§ 1012, 1014. Prior to his adoption, while the statute entitled her to do so, appellant did not institute an action for visitation of her grandson, nor does she explain her failure to do so.[1]

Even if she had obtained a visitation order prior to the adoption proceeding, however, she would stand in the

---

1. Her ignorance of the child's whereabouts, rather than preventing the commencement of a custody action, would have rendered court sanc-

same position. Under the CGVA, both the incipient right to seek visitation and any visitation rights already established by court order are extinguished upon the adoption of the child, 23 P.S. § 1015. Such evanescent rights, first protected by statute in 1982, 23 P.S. § 1001 *et seq.*, are not ones which activate the procedural protections of the due process clause. The limited, transitory nature of grandparental visitation privileges set forth in the statute convinces us that the privileges may properly be terminated in an adoption, just as all familial ties between an adoptee and other blood relatives are severed, without notice and without hearing.

## VISITATION

■ If appellant's right to intervene in the adoption proceeding is denied, she claims that she is nevertheless entitled to seek visitation under the CGVA. Her argument is that since the adoption cut off her visitation rights and she "never received any notice concerning the adoption, she should continue to enjoy the benefits and rights conferred upon her by the ... Act." Brief for Appellant at 13. After rejecting appellant's constitutional attack on the Adoption Act, we cannot sustain her attack on the CGVA provision which terminates grandparental visitation when a child is adopted. Having held that appellant was not entitled to notice of the adoption proceeding, and thus accepting its validity, we necessarily accept the consequence: appellant's statutory entitlement to seek visitation with her grandson ended when the adoption decree was granted.

The policy which dictates this apparently harsh result is well established. The entire body of law pertaining to adoption harmonizes in order to place an adopted child in the shoes of a natural child in all legal respects, failing only to alter the biological makeup of the child. The intention and result of the law is to enfold an adopted child in his new family so as to be indistinguishable from his new siblings in every possible respect.

tioned discovery measures in a pending action particularly valuable to her.

Rights of inheritance are changed; parental and filial rights and duties are altered; birth records are substituted; adoption records are impounded. In every possible respect, all family relationships are thus reestablished within the adopting family and all ties with the natural family are eradicated.

"In Pennsylvania a valid adoption severs the child from its natural family tree and engrafts it upon that of its new parentage. Thereafter the child attains the status, in law, of a natural child of the adopting parents: *Cave's Estate*, 326 Pa. 358, 192 A. 460 [1937]."

It is our opinion that adoptive or natural parents should have the right to select the persons with whom their child will associate as long as they properly perform their duties to the child. To take this right away from proper parents would not be for the best interest of the child. *Commonwealth ex rel. Dogole v. Cherry*, 196 Pa.Super. 46, 48, 173 A.2d 650, 651 (1961). We believe that these adoptive parents should also be permitted to select the persons with whom the child will now associate in order to effectuate his best interests.

Order affirmed.