513 A.2d 1061

**In re ADOPTION OF B.E.W.G. and S–L.W.G.**

**Appeal of Howard L. WEST and Kay West.**

Superior Court of Pennsylvania.

Argued May 30, 1986.

Filed Aug. 12, 1986.

Donald B. Hoyt, York, for appellants.

Before WIEAND, BECK and JOHNSON, JJ.

BECK, Judge:

This is an appeal from an order of the York County Common Pleas Court denying without a hearing a petition to unseal and inspect adoption records and to vacate an adoption decree. The appellant-petitioners, Howard West and Kay West (the Wests), are the natural maternal grandparents of the adoptees.

The basis of the trial court's order was that the Wests lacked standing to obtain the requested relief. We find the Wests have standing and remand for a hearing as to whether the adoption records should be unsealed and inspected. We also find that the Wests have standing as to whether the adoption decree should be vacated. Since the court must determine at the initial hearing whether to unseal the adoption records, we conclude that a decision as to whether the court should hold a hearing on the petition to vacate the adoption decree is premature; and therefore we do not decide that question. The facts of this case are complex. B.E.W.G. is now three years old and S–L.W.G. is now seven years old. They are the natural children of P.J.G. (Father) and L.G. Father stabbed and killed his wife L.G. on December 4, 1983, in Ithaca, Tompkins County, New York. At that time, S–L.W.G. was visiting her paternal grandfather, in the New York City area; B.E.W.G. was present at the marital residence in a trailer park in Brooktondale, New York. After the stabbing, Father was arrest-

ed and incarcerated in the Tompkins County jail. B.E.W.G. was taken into physical custody by a neighbor at the trailer park. On December 6, 1983, the paternal grandfather apparently obtained physical custody of B.E.W.G. from the neighbor and brought him to his residence where S–L.W.G. was staying.

On December 21, 1983, the Wests, after several unsuccessful efforts at locating the children, filed a petition for custody in the Family Court, State of New York, County of Tompkins. On March 26, 1984, Judge William C. Barrett directed that custody of the children be placed with Father who had been released on bail; granted the Wests visitation privileges; and further directed "that this order will remain in effect until the disposition or resolution of the criminal charges currently pending against [Father] in Tompkins County Court, or until further order of this Court."

Approximately two months later on May 15, 1984, the Tompkins County Family Court entered an order (May 15 order) which again granted custody of the children to Father and extended the visitation privileges of the Wests. Prior to the May 15 order and pursuant to the prior agreement of the parties, the Wests delivered on May 10, 1984 the two children to Father in the presence of his attorneys in Ithaca, New York. From the time they turned over the children on May 10, 1984 until they discovered their whereabouts in York County sometime in September 1985, the Wests lost track of and had no contact with the children.

It appears that on or about May 13, 1984, Father removed the children from New York. He took them to the Tressler Lutheran Service Associates (Tressler), York County, Pennsylvania, where he reportedly relinquished the children to the Tressler agency. The record contains an affidavit by a Millie Bull of York County, who states that between May 13, 1984, and July 8, 1984, she taught B.E.W.G. and S–L. W.G. at the Christ Lutheran Church Bible School and that, at the time, the children were in a foster home in Shrewsbury with a couple named in the affidavit. The affidavit continues: "After that they were adopted by another couple."

Not knowing that the children had been removed from New York State, Kay West drove to Brooklyn, New York on May 21, 1984 to pick them up for a week's visitation pursuant to the May 15 order. The children were missing, and on the following day Father communicated through his attorney that he would not reveal their whereabouts. On May 22, the jury returned a guilty verdict in Father's criminal trial. Judgment of sentence was entered on June 23, 1984 on conviction of a reduced charge of first degree manslaughter, upon Father's affirmative defense of extreme emotional disturbance. Father is currently serving a sentence of 8⅓ to 25 years in the New York state prison system.

On May 24, 1984, the Wests, still unaware of the whereabouts of the children, filed a new petition for custody in the Tompkins County, New York Family Court. In response to that petition, on May 29, 1984, (May 29 order) the Tompkins County Court entered three orders. The first ordered Father to show cause why custody should not be granted to the Wests. The second order directed that temporary custody of S–L.W.G. and B.E.W.G. be placed with the Wests. The third order provided for service of the orders on Father.

In response to the Rule to Show Cause, Father appeared at a fact-finding hearing on June 11. He refused to divulge any information concerning the whereabouts of the children; he asserted his fifth amendment rights repeatedly. On July 5, 1984, the Tompkins County Family Court issued a continuation of its prior order of May 29, granting temporary custody to the Wests.

As noted above from the affidavit of Millie Bull, on July 8, 1984, the children were in foster care and she was instructing them. Therefore, we conclude that when temporary custody was initially awarded to the Wests on May 29, 1984, the adoption decree in York County was not final.

The Tompkins County Family Court issued its formal decision and order on the Wests' May 24 petition on Novem-

ber 9, 1984. The decision and order directed that legal custody of the children be placed with the petitioners, Howard L. West and Kay West. Thus, the Wests have had legal custody of B.E.W.G. and S–L.W.G. from May 29, 1984; albeit for the period from May 29, to November 9, 1984 their legal custody was described as temporary.

On April 19, 1985, the district attorney of Tompkins County petitioned the court for an order unsealing the adoption records of B.E.W.G. and S–L.W.G. and to permit him to inspect the adoption records. On April 30, 1985, the Wests filed a similar petition with the Court of the County of Richmond, New York. On June 17, 1985, the Surrogate's Court of the State of New York, County of Richmond, ordered that the adoption records of the children be sent to the district attorney and the Wests' attorney. The court found that the petitioners had demonstrated the requisite "good cause" to open the adoption records. A review of the Richmond County records reveals that the adoption proceeding in the county was abandoned in April of 1984. The record is incomplete as to what if any adoption proceedings took place in Tompkins County.

On September 6, 1985, the Wests traveled to York County Pennsylvania. They learned that the children had been at Tressler Lutheran Services Associates from sometime in May to sometime in July 1984 and were subsequently adopted by unknown parties. The Wests then filed with the Orphan's Court Division of the York County Common Pleas Court a petition in two counts:

(1) to unseal and inspect the adoption records of [B.E. W.G.] and [S–L.W.G.] to determine:

(a) if the adoption proceedings were commenced and completed during the period that the children were under the jurisdiction of the Family Court of the State of New York, Tompkins County;

(b) if the adoption proceedings commenced and completed during the period that custody was awarded to Petitioners, Howard L. and Kay West;

(c) if there were filings or offering of any false instrument by [Father];

(d) if the adoption proceedings were valid; and

(2) to vacate the decree of adoption.

This petition was denied by President Judge Robert I. Shadle, by an order of January 14, 1986. In his statement of reasons issued pursuant to Pa.R.A.P. 1925(a), President Judge Shadle stated that he based his order on a finding that the Wests were without legal standing to obtain the requested relief. For authority he cited *Faust v. Messinger*, 345 Pa.Super. 155, 497 A.2d 1351 (1985).

The Wests filed this timely appeal. On appeal, the Wests allege that: (1) as maternal grandparents with legal custody they have standing to attack the adoption; (2) the Pennsylvania Adoption Act was violated in the instant adoption proceedings; (3) the Interstate Compact on the Placement of Children Act was violated in the adoption proceedings; (4) the law of the State of New York should apply, pursuant to the Uniform Child Custody Jurisdiction Act; and (5) that the adoption proceedings should be opened to allow for a complete review of the instant case.

The threshold question before us is whether the Wests have standing to petition to unseal and inspect the adoption records and to vacate the adoption decree. We conclude that the Wests do have standing, and therefore we remand for a hearing on whether the adoption records should be unsealed and inspected.

First, we examine the Wests' standing to unseal and inspect the adoption records. The Wests have had legal custody of B.E.W.G. and S–L.W.G. continuously since they were awarded temporary custody by a New York court on May 29, 1984.[1] Temporary custody relieved the father of legal possession and control over the children and placed the right to possession and control over the children in the Wests. It differed from full legal custody only in so far as it allowed the court the election of reconsidering its custody decision without either party petitioning and showing changed circumstances.

1. The New York Court retained on-going jurisdiction to decide the question of custody from the time the grandparents first filed a

In finding that the Wests did not have standing, the lower court relied on *Faust v. Messinger*, 345 Pa.Super. 155, 497 A.2d 1351 (1985). *Faust* is inapposite to the case sub judice. In Faust, a grandmother appealed from an order denying her *visitation rights* with her grandson following his adoption. The grandmother did not have legal custody, unlike appellants in the instant case. Legal custody gave the Wests the right to possession and control of the children as well as the duty to protect them and act for their welfare. Clark, Jr. The Law of Domestic Relations, Section 17.1 et *seq.* The "core concept" in standing questions is whether the person seeking relief is adversely affected or "aggrieved" in any way by the matter which he seeks to challenge through the judicial process. To have standing, the adversely affected party must allege an immediate, direct and substantial injury. *1000 Grandview Assn. v. Mt. Washington Assn.*, 290 Pa.Super. 365, 367, 434 A.2d 796, 797 (1981). A legal custodian of a child who alleges that he or she has been illegally deprived of possession of the child certainly alleges an immediate, direct and substantial injury.

The New York Court clothed the Wests in the role of protector of the children. This status gave them standing to petition the court to unseal and inspect the adoption records and to petition to vacate the adoption decree.

Upon remand the first task of the hearing court will be to determine whether the Wests have shown "cause" to unseal and inspect the adoption records. The Adoption Act of 1980 provides that records relating to adoption shall be withheld from inspection "except on an order of court granted upon cause shown." 23 Pa.C.S.A. § 2905(a) (as amended).

In deciding whether cause exists, the court must determine whether the Wests have justifiable reason to obtain

petition for custody on March 26, 1984. Under the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. §§ 5341–5366, the Pennsylvania courts are bound to recognize New York's jurisdiction including its determination on May 29, 1984 that temporary custody be with the grandparents. 42 Pa.C.S.A. §§ 5349, 5354.

the information relating to the adoption proceedings. The court must consider whether the adoption proceedings represented a fraud on the courts; whether the father, who no longer had legal custody, had the authority to consent to the adoption; whether the Wests, who had legal custody at the time of the adoption, were entitled to notice; and whether the adoption proceeding violated relevant state law, particularly the Pennsylvania Adoption Act, 23 Pa.C. S.A. § 2101 et seq., and the Interstate Compact on the Placement of Children Act, 62 P.S. § 761.

It may be helpful to note that the New York statute on the confidentiality of adoption records is similar to the act in Pennsylvania except that the New York statute requires "good cause" while the Pennsylvania statute requires only "cause" to unseal and inspect adoption records. The Richmond County Surrogate's Court considered the question of cause to open records when the Wests petitioned to inspect the Richmond County adoption records relating to B.E.W.G. and S–L.W.G. in April, 1985. The court order stated in part:

> The relevant statute for the proceedings herein is Section 114 of the Domestic Relations Law which provides, in part:
>
>> "No person shall be allowed access to such sealed records and order and any index thereof except upon an order of a judge or surrogate of the court in which the order was made or of a justice of the supreme court. No order for disclosure or access and inspection shall be granted exept on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct."
>
> Accordingly, petitioners must demonstrate "good cause" so as to warrant the disclosure and inspection of the adoption records.
>
> The courts have given us little guidance, however, as to the existence or not of "good cause." As the Court of Appeals most recently stated:
>
>> "By its very nature, good cause admits of no universal, black-letter definition. Whether it exists, and the ex-

tent of disclosure that is appropriate must remain for the courts to decide on the facts of each case." (*Matter of Linda F.M.*, 52 N.Y.2d 236, 240 [437 N.Y.S.2d 283, 418 N.E.2d 1302]).

In the instant case, we have a natural father, convicted of murdering his wife, who has surreptitiously hidden his two young children and now refuses to divulge their whereabouts. Petitioners seek to inspect the records of the adoption proceedings, hoping to find some clue as to the whereabouts of the missing children.

The Court determines that Petitioners have demonstrated the requisite "good cause" so as to warrant the inspection and disclosure of the adoption records. Accordingly, their application is hereby granted.

In light of our conclusion that the Pennsylvania courts are bound by the decision of the New York order granting the grandparents custody, we vacate the Order of the court and remand the case for a hearing consistent with this opinion. Jurisdiction is relinquished.