562 A.2d 1375

**In re ADOPTION OF Melanie Lynn HESS and Matthew James Hess.**

**Appeal of Carol HESS and David Hess.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1988.

Filed July 17, 1989.

Reargument Denied Sept. 5, 1989.

302

Elizabeth A. Hambrick–Stowe, Lancaster, for appellant.

William C. Crosswell, Lancaster, for Family & Children Services, Participating Party.

Before ROWLEY, WIEAND and BECK, JJ.

ROWLEY, Judge:

■ This is an appeal from an order sustaining preliminary objections and dismissing a complaint for custody and a petition to intervene in and stay adoption proceedings. At issue on this appeal are the rights of proposed adoptees when someone other than the proposed adoptive parents brings to the court's attention before the adoption is decreed that the best interests of the proposed adoptees may not lie in adoption by the proposed adoptive parents. By

refusing to permit appellants to intervene in the adoption proceedings and by refusing to give any meaningful consideration to their petition for custody, the trial court denied the proposed adoptees *their* right to have their "best interests" determined upon a consideration of *all* relevant facts. We reverse and remand for further proceedings.

The factual background of this case as averred in the Complaint for Custody and the Petition to Intervene and Stay, as well as in the affidavit attached thereto, is as follows. The proposed adoptive children, Melanie Hess and Matthew Hess, whose custody is in issue in the present case, are a sister and brother who at the time of the filing of the complaint for custody in this case were five and four years old respectively. They also have four other siblings who are not involved in the present proceedings.

During their lives, Melanie and Matthew, the natural parents of Melanie and Matthew, as well as the other four siblings of Melanie and Matthew, lived with their grandparents, the appellants herein, for various periods of time because the natural parents had difficulty in obtaining suitable housing for themselves and their six children. During much of this time, the grandmother was the primary caretaker of all of the children.

In June of 1985, the natural parents advised the grandparents that they had found suitable housing, and therefore removed all six children from the grandparents' home. The grandparents later learned that the six children had been placed with Lancaster County Children and Youth Social Service Agency (Children and Youth). The grandparents then worked with Children and Youth, and were granted custody of three of the children (not including the two involved in this case) in October 1985. So long as the other three children remained in custody of Children and Youth, the grandparents took the three children in their custody to visit with their siblings regularly.

In July 1986, Melanie and Matthew were returned to their natural parents, and in December 1987, the sixth child was placed in custody of the grandparents. In the spring of

1987, Melanie and Matthew were again taken from the natural parents and placed in the custody of Children and Youth. Upon learning of this, the grandparents contacted Children and Youth and obtained physical custody of Melanie and Matthew. One day shortly thereafter, the natural father of the children said that he was going to take Melanie and Matthew out for breakfast. Instead, he took them to Children and Family Services of Lancaster County (the Agency). Upon learning this fact, the grandparents contacted the Agency and advised it of their willingness and ability to care for Melanie and Matthew, "as a family together with their sisters," but the Agency refused even to discuss the children with the grandparents and the children were never returned to them. Instead, the natural parents voluntarily relinquished their parental rights to Melanie and Matthew. A decree terminating their parental rights was entered pursuant to 23 Pa.C.S. § 2521, custody of Melanie and Matthew was given to the Agency, and the Agency placed the children with proposed adoptive parents who filed a petition for adoption.

When the grandparents, who by this time had complete legal and physical custody of the siblings of Melanie and Matthew, learned that a notice of intent to adopt had been filed, they filed the instant Complaint for Custody and Petition to Intervene and Stay the adoption proceedings. The Agency filed preliminary objections in the nature of a demurrer and alleged that the grandparents lacked the capacity to sue. In sustaining the preliminary objections and ordering the complaint and petition to be dismissed with prejudice, the trial court held that the grandparents are not parties in interest in the adoption proceedings, and therefore have no right to appear during the pendency of the adoption proceedings and demand custody or visitation. The grandparents have appealed from this order.[1]

While it is clear from the trial court's disposition of the custody complaint and the petition to intervene in and stay the adoption proceedings that it perceived the critical issue

1. It appears that no adoption has yet been decreed.

in this case to be the rights of the grandparents, and while the Agency follows this analysis in the present appeal, the dispositive factor in this case must be the rights of the *children* whose *BEST* interests the court must determine in the adoption proceeding. As this Court stated in *Matter of Adoption of Sturgeon*, 300 Pa.Super. 92, 107, 445 A.2d 1314, 1321 (1982):

> The law as to adoption in Pennsylvania is well-settled: a child may be adopted if its parents have had their parental rights terminated, either by consent or involuntarily. *Once this prior adjudication has been made* and the rights of the natural parents are no more, *the best interest of the child becomes the criterion by which a court must be guided.*

(Emphasis in original). Applying this standard to the present case, we conclude that it was an abuse of discretion not to grant the Petition to Intervene and Stay and to dismiss summarily the Complaint for Custody without a hearing on the basis that the grandparents have no right to file such a complaint or petition once a notice of intent to adopt has been filed.

The trial court's dismissal of the Complaint for Custody as well as the Petition to Intervene and Stay was based on the conclusion that appellants had no right to intervene in the adoption proceedings or interfere with them, by filing a separate Complaint for Custody, because the rights of the children's parents had been terminated. Intervention by a party *shall* be permitted however, if "such person could have joined as an original party in the action or could have been joined therein." Pa.R.C.P. 2327(3). Our scope of review of an order granting or denying a petition to intervene is limited, and we will reverse the trial court's decision only where there has been a manifest abuse of discretion. *Wilson v. State Farm Mutual Automobile Ins. Co.*, 512 Pa. 486, 517 A.2d 944 (1986). Therefore, in order to decide whether the trial court's order dismissing the Complaint for Custody and the Petition to Intervene and Stay was proper, we must determine whether the trial court abused its dis-

cretion in deciding that appellants could not, at a minimum, have been joined in the adoption proceedings.

■ The Adoption Act makes clear that the natural *parents* whose rights have been terminated may not participate in the adoption proceedings and do not need to receive notice of the adoption proceedings. 23 Pa.C.S. § 2521(a). However, the Adoption Act does not preclude other relatives of the child from participating in adoption proceedings after the rights of the child's parents have been terminated and before a final decree of adoption has been entered. Nor does it preclude other relatives from seeking to enforce rights they may have in connection with the child. On the contrary, a statute expressly provides that biological, or non-biological, grandparents continue to have the right to seek partial custody and visitation with a grandchild in certain circumstances *after the parents' rights have been terminated and until the child is adopted.* See 23 Pa.C.S. §§ 5311–5314. The Adoption Act also not only does not prohibit biological relatives from filing a petition for adoption after parental rights have been terminated, but expressly excuses certain biological relatives, including grandparents, from the requirement of filing a "Report of Intention to Adopt" when they have custody of the biologically-related child whom they want to adopt. 23 Pa.C.S. § 2531(c).

That a decree terminating parental rights affects *only* the rights of the parents of a child, and not other relations of the child, is especially apparent when one considers that in many instances where the natural parents' rights have been terminated or where the natural parents have died, it is relations of the child who obtain custody of the child and/or adopt the child. Thus, while the Adoption Act completely and irrevocably severs any legal relationship between the parent and child, the Act does not necessarily sever the relationship between the child and relatives of the child other than the child's natural parents.

In addition to the absence of any prohibition in the Adoption Act of relations, other than a natural parent

whose rights have been terminated, participating in the adoption proceedings, the Act affirmatively provides that "[n]otice of the hearing [on the adoption petition] *shall* be given to all persons whose consents are required *and to such other persons as the court shall direct.*" 23 Pa.C.S. § 2721 (emphasis added.) By including the phrase "such other persons as the court shall direct," the legislature manifested its intent that there would be some circumstances in which the court should order notice of adoption proceedings to persons other than those required to give their consent under the Act. Such a construction of the Adoption Act is required by the Statutory Construction Act which directs that we are to give effect to *all* words in a statute, 1 Pa.C.S. § 1921(a).

Both the Agency and the trial court have taken the position that the appellants have no interest whatsoever in the present case and that any ideas which appellants might have concerning the best interests of the children can be ignored. However, the concept that an agency alone can determine, with unfettered discretion, what it perceives to be the best interests of a child in its custody while disregarding assertions by others of different "best interests" of the child, and that it is appropriate for the court summarily to refuse to hear and consider claims concerning the best interests of a child where adoption proceedings are pending in its court, is contrary to the law of this Commonwealth.

In *Matter of Adoption of Sturgeon*, 300 Pa.Super. 92, 445 A.2d 1314 (1982), this Court examined the nature of the responsibility of the Commonwealth in adoption cases, and concluded that the Commonwealth, in the guise of both the court and the social service agency having custody of the child, bears a very heavy responsibility to the child. *Sturgeon* involved contemporaneous claims for adoption of a child by two different pairs of prospective adoptive parents, the Scotts and the Becks, both of which had been foster parents for the child, as selected by the Clearfield County Children and Youth Services who had legal custody of the child. When the Scotts filed a petition to adopt the child in

Clearfield County, the Clearfield County court held hearings and entered an order directing the Clearfield Agency to return the child to the Scotts for a period of six months, after which the Court would decide the Scotts' adoption petition. The Becks, however, who had been given physical custody of the child by the Agency at this time, refused to relinquish physical custody to the Agency. Among various other petitions and pleadings which they filed, the Becks then filed both a petition for adoption and a petition for custody in Venango County, asserting that the child's best interests were to remain with the Becks. The Venango County Court, following hearings, entered an order awarding custody of the child to the Becks, but postponed the resolution of the Becks' adoption petition pending the appeal from the Venango County court's order awarding custody to the Becks.

On appeal, the court noted that the case had to be considered as an adoption case, and not a custody case. To that end, the court stated,

> From the moment that the State, in the guise of the court and the agency, assumed the custody of this child, *it also assumed an obligation to exercise its powers in [the child's] best interests. This was the sole standard for any decision on his adoption, and it is one that should be applied on full facts elicited during hearings in which all pertinent facts are placed before the court.*

*Sturgeon, Id.,* 300 Pa.Superior Ct. at 108, 445 A.2d at 1321–1322 (emphasis added). The Court affirmed the Venango County court's order stating:

> when the Becks turned to the court of their own county alleging that [the child's] best interest lay in his adoption by them, the Venango County Court was correct in its decision to accept the case and to *base its conclusions on full participation of all interested parties with a view to discovering the best interests of the child* [ ].

*Id.,* 300 Pa.Superior Ct. at 110, 445 A.2d at 1323 (emphasis added).

This responsibility of the court to consider all relevant evidence in order to assess the best interests of a child whose adoption is pending does not necessarily continue once the court has made a determination of the best interests of the child and has decreed an adoption in accord with that determination. Thus, this Court's decision in *Faust v. Messinger*, 345 Pa.Super. 155, 497 A.2d 1351 (1985), is consistent with its holding in *Sturgeon.*

In *Faust,* a grandmother filed a petition for custody and a petition to intervene *nunc pro tunc* in the adoption proceedings of her grandchild one-and-one-half years *after* the adoption had been decreed. The court denied the petition to intervene and the custody petition. However, at the time the adoption proceedings had been pending, the court, through no apparent fault of its own, had been entirely unaware of the grandmother and her assertion of the best interests of the child. By the time that the court first learned of the grandmother's interests, the court had already fully satisfied its responsibility to determine the best interests of the child based on all the information known to be available to it when the decision was made.

In the present case, however, a decree of adoption has not yet been entered, and only a notice of intent to adopt has been filed. Therefore, just as in *Sturgeon,* when the Commonwealth in the person of the Lancaster County Orphans' Court and the Lancaster County Family and Children's Services assumed the custody of Melanie and Matthew upon the termination of the parental rights of the children's natural parents, the Commonwealth, through both the court and the Agency, assumed the awesome and profound responsibility to use their powers in the *BEST* interests of the children. It is not sufficient that they determine what would be adequate for the children, or what might be reasonable for them. Even a determination of what would be good for the children would fall short of the Commonwealth's obligation. It is incumbent upon the Commonwealth, once it undertakes the monumental responsibility of deciding permanently the course upon which to set the

children's entire future, to ascertain the *paramount* interest of the children. Nothing less than a determination of the *BEST* interests of the children will discharge the Commonwealth from its weighty responsibility to them, and the "*BEST* interest" standard can only be applied, as the Court emphasized in *Sturgeon,* on "full facts elicited during hearings in which all pertinent facts are placed before the court."

In the present case, the appellants have averred in their petition for a stay and in their custody petition that they contacted the Agency, before any notice of intent to adopt was filed, to advise them that they wanted to visit with Melanie and Matthew and that they were willing and able to care for the children. They have also averred that the Agency refused to discuss the placement of the children with them, refused to disclose where the children were staying, and refused to meet with them. The appellants have also averred that it is in the best interest of the children that they be placed with the appellants, who have legal and physical custody of all of Melanie and Matthew's siblings, and with whom Melanie and Matthew have lived for perhaps as long as four and one-half years.

Aside from the bald assertion that the natural parents of the children, whose parental rights have been terminated, expressed to the Agency that they did not want the children to be placed with their maternal grandmother, there is nothing in the record to indicate why the Agency would not even discuss with the grandparents the possibility of placement with them particularly in light of the fact that they had custody of the siblings of the children involved here. In addition, the record does not show that the Agency provided the court with any information from which the Court could *review* the decision of the Agency to have nothing whatsoever to do with the grandparents who have always asserted that the best interests of the children is contrary to the Agency's determination of the best interests of the children. Moreover, when the petition for custody and to intervene was filed, based on assertions of the best

interests of the children contrary to that asserted by the Agency, the court refused even to listen to the evidence of the grandparents and put them out of court forever as to the adoption of these children.

■ Where, as here, a party comes before the court and seeks to intervene in an action to determine the best interests of children in an adoption action and the party avers that the children have periodically in the past lived with the party, that the party has legal custody of all the siblings of the children, that the party is willing and able to care for the children, and that the agency who presently has legal custody of the children refuses to have anything whatsoever to do with the party, and where the party avers that the best interests of the children are contrary to what the agency has advised the court, the court *must*, in satisfaction of its obligation under *Sturgeon* to consider upon a full hearing *all* evidence bearing on the best interests of the children, at least conduct a hearing to determine if there is any merit to the claim of the party concerning the best interests of the children. To summarily order the party out of court is to default on its responsibility to ascertain the *BEST* interests of the child.

There is also statutory authority for permitting the grandparents in this case to intervene at least to the extent of having the opportunity to present the court with evidence to support their claim of the best interests of the children. Were the present proceedings at the hearing stage of the adoption proceedings, we have no hesitation in concluding that in light of the obligation of the Agency and the Court in adoption proceedings as set forth in *Sturgeon*, the court would have had the obligation under the notice provisions of 23 Pa.C.S. § 2721, discussed previously, to order that notice of the adoption proceedings be given to the grandparents, and that they be made parties to the adoption proceedings because they claim to have evidence pertaining to the ultimate issue which the court must resolve. The mere fact that in this case the grandparents have moved to intervene before the adoption proceedings have reached the hearing

stage has no bearing on the court's responsibility to consider any and all evidence relating to the best interests of the child before decreeing the child's adoption. By seeking to intervene prior to the time when we hold that the court would be required to give notice to the grandparents of the hearing, the grandparents may actually enable the court to determine sooner what the best interests of the children are, and thereby have the children placed in a permanent setting sooner.

Not only did the court err in summarily precluding the grandparents in this case from ever presenting the court with an alternative scheme for the best interests of the children, but the Agency, by providing nothing of record to establish that the claim of the grandparents had been considered by it and rejected for reasons related to the best interests of the children (as distinguished from the desires of the natural parents whose rights have been terminated) *and* by taking the position that the court should summarily deny with prejudice the petition of the grandparents to intervene in the adoption proceedings and to seek custody, has evidenced a blatant disregard for the *best* interests of the children, which under *Sturgeon, supra,* requires that the court be provided the most information possible before making a determination of the best interests of the children.

In a similar vein, we also find significant the fact that even on the present appeal, no independent counsel has been appointed to represent the interests of the children. The Adoption Act mandates the appointment of independent counsel to represent the child in an involuntary termination proceeding where the action is being contested. 23 Pa.C.S. § 2313(a). In all other proceedings under the Adoption Act, the court has the discretion to appoint counsel or a guardian ad litem for the child *where it is in the best interests of the child.* 23 Pa.C.S. § 2313(a). Because the present action is not a contested involuntary termination proceeding, the trial court was not required to appoint independent counsel for the children. However, the purpose of § 2313(a) is to ensure that the needs and welfare of a child will be actively

advanced by an advocate who owes loyalty *only* to the child. *In re Adoption of N.A.G.*, 324 Pa.Super. 345, 471 A.2d 871 (1984). Where, as in the present case, there are competing allegations of the best interests of the child, and where the court, without conducting a hearing by which it could receive evidence so that it could make a fully informed determination of the *BEST* interests of the child, summarily dispenses with one of the competing allegations of the child's best interests, and where no counsel has been appointed to represent *exclusively* the child's interests, we cannot conclude that the *BEST* interests of the child have necessarily been advocated and determined. .

In the present case, by summarily dismissing the appellants' Complaint for Custody, and by refusing them permission to intervene in the adoption proceedings, thereby precluding from the court's consideration information which may be relevant to the determination of the best interests of the children, the court has compounded and condoned the failure of the Agency to bring all relevant information concerning the best interests of the children before the court in the adoption proceedings. The court, just as the Agency, has knowingly denied the children their right to have the course of their future determined upon consideration of all relevant information as mandated in *Sturgeon*. The court has preliminarily barred the presentation of potentially relevant evidence concerning the *BEST* interests of the children, and has thereby rendered it impossible for it to make a reasoned determination of the children's *BEST* interests on the basis of *ALL* of the possibly relevant evidence bearing on the ultimate and vital issue before it.

By our decision today we are making no assessment of the merits of the grandparents' claim of the best interests of the children. Upon hearing the evidence which the grandparents have to offer to support their assertions of the best interests of the children, the court may decide that it does not agree with the grandparents' definition of the best interests of the children, and it may determine that what the Agency advances as being in the best interests of

the children is in fact what is *BEST* for the children. That is a decision which is left to the discretion of the trial court. Our decision today is concerned exclusively with a) the summary rejection by the Court of the grandparents' petition to intervene in the adoption proceedings and for custody solely on the basis that the natural *parents'* rights have been terminated and someone else has already filed a notice of intent to adopt, and b) the unsupported, unilateral determination by the agency which purportedly represents the best interests of the children, that the *BEST* interests of the children can be determined without the court considering the evidence in support of competing claims of the best interests of the children.

Order dismissing petition for custody and denying petition to intervene and stay proceedings is reversed. Case remanded for further proceedings. Jurisdiction relinquished.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

The majority, in its great concern for the rights of biological grandparents, has rewritten the Adoption Law by adding notice and hearing requirements not included by the legislature and has condemned Melanie Lynn and Matthew James Hess to additional years of uncertainty. I respectfully dissent.

The real issue in this appeal is whether a maternal grandmother and step-grandfather (hereinafter "grandparents") have standing to intervene in proceedings to adopt grandchildren after parental rights to the children have been terminated finally and custody has been awarded to Family and Children's Service, which has placed the children for adoption. The trial court dismissed the grandparents' petition to intervene, and the grandparents appealed. I would affirm.

Melanie Lynn Hess (age six) and Matthew James Hess (age five) are children who were born to Tina Marie and

Kenneth John Hess, husband and wife. In June, 1987, the children were taken by their parents from the home of David and Carol Hess, the childrens' grandmother and step-grandfather,[1] where they had been residing with four siblings,[2] and temporarily placed in the custody of Family and Children's Service. On September 25, 1987, the parents of Melanie and Matthew executed consents to adoption of the children; and thereafter, the agency placed the children in the home of pre-adoptive parents. Reports of intent to adopt were filed on November 6, 1987; and on November 24, 1987, the court terminated the parental rights of Tina Marie and Kenneth John Hess. On March 17, 1988, the grandparents filed a petition to intervene, to stay the adoption proceedings, and to obtain custody of the children. The agency and the prospective adoptive parents filed preliminary objections in which they averred that the grandparents lacked standing to intervene. These preliminary objections were sustained by the court, and the petition to intervene was dismissed.

"The 'core concept' in standing questions is whether the person seeking relief is adversely affected or 'aggrieved' in any way by the matter which he seeks to challenge through the judicial process. To have standing, the adversely affected party must allege an immediate, direct and substantial injury." *In re Adoption of B.E.W.G.*, 355 Pa.Super. 554, 560, 513 A.2d 1061, 1064 (1986), quoting *1000 Grandview Assn. v. Mt. Washington Assn.*, 290 Pa.Super. 365, 367, 434 A.2d 796, 797 (1981). Standing to intervene in a pending action, as pertinent to adoption proceedings, is proper when the petitioner "could have joined as an original party in the action or could have been joined therein" or when "the determination of such action may affect any legally enforceable interest of such [petitioner] whether or

**1.** David Hess is the brother of the children's natural father, and therefore is also the children's paternal uncle.

**2.** David and Carol Hess have legal and physical custody of the children's four sisters pursuant to court orders entered in October of 1985 and October of 1987. Prior to the instant action, no proceedings had ever been initiated by the grandparents to obtain legal custody of Melanie and Matthew.

not he may be bound by a judgment in the action." Pa.R. C.P. 2327(3) and (4).

In the instant case, the petitioning grandparents have no legally cognizable interest in the adoption of Melanie and Matthew Hess. The interests of the biological parents were terminated by court decree. The effect of the court's decree was to terminate also the interests of other biological relatives.

The policy which dictates this apparently harsh result is well established. The entire body of law pertaining to adoption harmonizes in order to place an adopted child in the shoes of a natural child in all legal respects, failing only to alter the biological makeup of the child. The intention and result of the law is to enfold an adopted child in his new family so as to be indistinguishable from his new siblings in every possible respect.

Rights of inheritance are changed; parental and filial rights and duties are altered; birth records are substituted; adoption records are impounded. In every possible respect, all family relationships are thus reestablished within the adopting family and all ties with the natural family are eradicated.

*Faust v. Messinger*, 345 Pa.Super. 155, 160–161, 497 A.2d 1351, 1353 (1985).

Although the courts of this Commonwealth have not been called upon to consider the rights of grandparents to intervene in adoption proceedings, the courts of other jurisdictions have generally denied intervention by grandparents when at least one of the natural parents is alive and has consented to the adoption. See: *Christian Placement Service v. Gordon*, 102 N.M. 465, 697 P.2d 148 (1985) (paternal grandmother could not intervene in adoption based on her status as a grandmother after her son's parental rights had been terminated and the child's mother had consented to adoption); *Krieg v. Glassburn*, 419 N.E.2d 1015 (Ind.App. 1981) (grandparents have no standing to intervene in adoption proceedings); *Petition of Benavidez*, 52 Ill.App.3d 626, 10 Ill.Dec. 362, 367 N.E.2d 971 (1977) (same); *Hayes v.*

*Watkins*, 163 Ga.App. 589, 295 S.E.2d 556 (1982) (grandparents may not intervene in adoption proceeding where at least one parent is alive and has consented to adoption); *Muggenborg v. Kessler*, 630 P.2d 1276 (Okla.1981) (consent to adoption by natural parents cannot be defeated by opposition of grandparents). See also: *Adoption of D.J.H.*, 18 Pa.D. & C.3d 424 (Allegheny, 1979) (grandmother may not intervene or inspect adoption records where parental rights have been terminated; grandmother is not a party and her consent to adoption is not required). Compare: *In re: Adoption of B.E.W.G.*, 379 Pa.Super. 264, 549 A.2d 1286 (1988) (grandparents had standing to intervene in adoption proceedings where they had been awarded temporary legal custody and action for permanent legal custody was pending at time when father clandestinely removed children from jurisdiction and surrendered them for adoption in another jurisdiction).

Appellants concede that under the Adoption Act [3] the only consents required for a valid adoption are those of the natural parents. They argue, however, that they were entitled to notice under 23 Pa.C.S. § 2721. This section of the statute provides that "[n]otice of the hearing [on the adoption petition] shall be given to all persons whose consents are required and to such other persons as the court shall direct." The purpose of notice to additional persons, they argue, is to permit intervention by interested parties.[4] Because grandparents are interested parties, they contend, their petition for intervention should have been allowed.

This argument is not persuasive. The only consents required for the adoption of the children in this case were the consents of the parents and Family and Children's Service, to whom the court awarded custody of the children after the parental rights had been terminated. Consents to

---

3. 23 Pa.C.S. § 2101, et seq.

4. The provisions of 23 Pa.C.S. § 2503(b) require that notice of a hearing to terminate parental rights be given to a grandparent when the parent is less than eighteen years of age. In the instant case, both parents were more than eighteen years of age when the consents to adoption were executed.

adoption had been executed in writing by the parents, and no attempt had been made to revoke these consents within the forty day waiting period required by 23 Pa.C.S. § 2504(a). Thereafter, Family and Children's Service petitioned to confirm the parents' consent; a hearing to determine the validity of the consents was scheduled; and notice thereof was given to the natural parents. When the parents failed to appear, the court took testimony in their absence and entered a decree terminating parental rights and placing the children in the custody of Family and Children's Service.

Therefore, only the consent of Family and Children's Service is necessary for adoption. There is no requirement that notice of the adoption proceedings be given to the children's biological relatives. Similarly, the Act makes no provision for intervention by biological relatives. Their rights, if any, came to an end with the decree terminating the rights of the biological parents. The language of 23 Pa.C.S. § 2721 cannot be interpreted as giving additional rights to biological relatives by implication.

If there is no statutory language granting a specific right to intervene, appellants argue, there is nevertheless a right to intervene which arises from an underlying policy to keep families together. In support of this contention they cite the Juvenile Act, 42 Pa.C.S. § 6301, et seq., which states as its purpose the preservation of family unity; the Children and Minors Act, 23 Pa.C.S. § 5313, which permits partial custody or visitation by grandparents when a child is removed from the grandparents' home after living there for twelve months or more; and the general policy of the law that, absent compelling reasons, siblings should be raised together. See: *Mahoney v. Mahoney*, 354 Pa.Super. 585, 512 A.2d 694 (1986). This goal of keeping the family together must also be given consideration, they argue, in determining family rights in adoption proceedings. This argument is also unpersuasive.

Both the Children and Minors Act and the Juvenile Act are concerned with children whose parents continue to enjoy

parental rights and duties. While parental rights to children continue, the law's primary goal is to preserve the family unit and keep the members together. The Adoption Act does not share this goal. It is intended to provide a permanent family relationship for children only after the rights of the biological parents have been surrendered, forfeited, or otherwise terminated. To effect this purpose, the Adoption Act severs all biological relationships and creates a new parent/child relationship with a new family and new relatives. There is no place for biological relatives of the child in the scheme of the Adoption Act. See: *Faust v. Messinger, supra.* Thus, the policies which prompted the Children and Minors Act and the Juvenile Act are entirely different than the goals and purposes of the Adoption Act.

If the Adoption Act does not contemplate them as parties, appellants argue, their right to intervene is nevertheless guaranteed by fundamental constitutional protections. They rely on decisions pertaining to certain aspects of family life which are deemed fundamental. These decisions include: *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right to procreate is fundamental and cannot be statutorily denied); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (statute outlawing contraception violates constitutional right to privacy of married couples); and *Inez Moore v. City of Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (zoning ordinance allowing only members of nuclear family to reside together violates due process clause of the 14th Amendment). There is no merit in this argument. Although the Supreme Court of the United States has recognized that certain fundamental rights pertain to marriage and the family, in this case those rights were severed voluntarily by the parents. The rights of other biological relatives, being derivative, were also terminated when parental rights were terminated. See: *Faust v. Messinger, supra* (grandmother's right to visitation terminated by adoption of grandchild). See also: *J. & E. v. M. & F.,* 157 N.J.Super. 478, 385 A.2d 240 (1978), *cert. denied,* 77 N.J. 490, 391 A.2d 504. Appellants had not previously sought or

been awarded legal custody of Melanie and Matthew, and as grandparents they had not acquired rights which survived the decree terminating the rights of the parents. Also terminated by the court's termination decree were the rights of other biological relatives, including siblings. Therefore, appellants do not acquire standing to intervene in their own right or by asserting that they are representing the interests of the children's siblings whom the grandparents have taken into their home and whose custody has been awarded to them.

Similarly, appellants cannot claim standing by asserting that they represent the interests of the children who are about to be adopted. The statute, at 23 Pa.C.S. § 2313, authorizes a court to appoint counsel or a guardian ad litem for the children, but neither the Adoption Act nor any other law bestows upon biological grandparents the right to act on behalf of grandchildren who are not in their custody and whose parents have surrendered them for adoption.

I am constrained to conclude, therefore, that the appellant-grandparents in this case do not have such an interest as will allow them to intervene in a proceeding to adopt children after the rights of the children's parents have been terminated with the parents' consent.[5] If the result seems harsh, it is justified by a policy which seeks to serve the best interests of the children by promptly enfolding them in another permanent family relationship with new parents and new relatives.

Appellants contend that it was also error for the trial court to dismiss their request for custody of their grandchildren.[6] Although the appellate courts of this Common-

5. On February 11, 1988, the biological parents signed a statement in which they indicated a preference that the children be adopted by the appellant-grandparents. This, however, came too late. Their parental rights had been finally terminated in November of the prior year.

6. Petitioners do not assert their right to custody of the children under the Children and Minors Act which allows for custody and/or visitation by grandparents, but terminates that right upon adoption of the children. 23 Pa.C.S. §§ 5313 and 5314. Petitioners agree that such a claim, even if successful, would provide only fleeting relief since the children are on the verge of adoption.

wealth have occasionally affirmed court orders awarding custody of children to their grandparents in order to preserve the family, on all of such occasions the family continued to exist.[7] Here, parental rights have been terminated and, in a legal sense, the rights of biological relatives, being derivative, have been severed. The issue now is one of adoption, not custody. By court order, custody of Melanie and Matthew has been awarded to Family and Children's Service; and that agency has placed the Children for adoption. Appellants' attempt to delay the adoption by relitigating custody is untimely and inappropriate. Cf. *In re D.K.W.*, 490 Pa. 134, 142, 415 A.2d 69, 73 (1980) (termination of parental rights under Adoption Act renders moot any custody issues under the Juvenile Act).

I would hold, therefore, that the trial court was correct when it dismissed the petition by the appellant-grandparents to intervene and relitigate custody issues in adoption proceedings, where adoption had been consented to by Family and Children's Service, the legal custodian of the children, after parental rights had been terminated.

7. In *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980), the Supreme Court awarded custody of small children to maternal grandparents in preference to a father, where the children had resided with their grandparents since birth and had been raised with a half-brother. In *In re David L.C.*, 376 Pa.Super. 615, 546 A.2d 694 (1988), the Superior Court affirmed an order of a trial court which had awarded custody of a young boy to his great-grandmother in preference to a mother, where psychological bonding had taken place between the boy and his great-grandmother, who had cared for him almost continuously since birth, and the mother's sole purpose in seeking custody had been to surrender the child for closed adoption.