**In the Matter of the Adoption of: A.J.B.**

**Appeal of: Erie County Office of Children and Youth.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2001.

Filed March 15, 2002.

Reargument Denied May 22, 2002.

Catherine A. Allgeier, Erie, for appellant.

Jeffrey A. Misko, Erie, for K.B.

BEFORE: HUDOCK, MUSMANNO, and TODD, JJ.

TODD, J.:

¶ 1 Erie County Office of Children and Youth ("OCY") appeals the March 16, 2001 Order of the Erie County Court of Common Pleas, Orphans' Court Division ("Orphans' Court"), entered by the Honorable Ernest J. DiSantis, Jr., dismissing its petition for a trial, and denying its motion to dismiss a petition to voluntarily relinquish parental rights filed by K.B. ("Mother") with respect to her daughter, A.J.B., born June 17, 1998.[1] In this case of first impression, this Court is called upon to determine whether the Orphans' Court erred in imposing a reasonableness standard with respect to OCY's refusal to consent to Mother's voluntary relinquishment petition. For the reasons that follow, we affirm.

¶ 2 The facts of this case are as follows: On November 9, 1999, A.J.B. was adjudicated dependent and placed in the care and custody of OCY. At the time she was removed from Mother's custody, A.J.B. had numerous visible injuries. Although the injuries were not inflicted by Mother, the record indicates that Mother failed to obtain appropriate medical care for A.J.B.'s injuries, thus resulting in her conviction for endangering the welfare of A.J.B. Following permanency hearings, the Orphans' Court granted OCY's request to proceed with the involuntary termination of Mother's parental rights with respect to A.J.B. At the time of the involuntary termination trial, however, Mother indicated that she wished to voluntarily relinquish her parental rights to A.J.B. OCY objected on the basis that, pursuant to 23 Pa.C.S.A. § 2501, a petition by Mother and consent by OCY were prerequisites to the voluntary relinquishment of parental rights. The Orphans' Court granted Mother leave to file a voluntary relinquishment petition, which she filed on December 29, 2000. Following a response by OCY, Mother filed an amended petition on February 12, 2001.

¶ 3 The Orphans' Court conducted a hearing on March 1, 2001, at which time OCY moved to dismiss Mother's petition on the basis that the petition was not signed or verified by Mother;[2] the petition did not contain A.J.B.'s birth certificate;[3] the petition did not join OCY;[4] and the petition did not contain a consent by OCY to accept custody of A.J.B. OCY further indicated that it would not give its consent. OCY also argued that it had the right to an involuntary termination trial; that it had the right to refuse to join in the voluntary relinquishment petition; and that it was not required to have a reasonable basis for its refusal to consent to Mother's voluntary relinquishment petition. Finally, OCY argued that its refusal to consent to Mother's voluntary relinquishment petition was justified by the fact that A.J.B. had been physically abused; that Mother might be pregnant;[5]

1. A.J.B.'s father is deceased.

2. *See* Pa.R.C.P. 1023 and 1024. The Orphans' Court noted that the required verification was provided on February 27, 2001.

3. *See* Orphans' Court Rule 15.2(b)(2). The Orphans' Court indicated that it would take

judicial notice of A.J.B.'s birth certificate, which was part of the record in the case.

4. *See* Orphans' Court Rule 15.2(b)(4).

5. Indeed, Mother gave birth to a child in October 2001.

that A.J.B. was the second child removed from Mother's custody; that Mother failed to comply with the court-ordered treatment plan during the dependency portion of the case; and that a finding of involuntary termination would affect OCY's obligation to provide services in future dependency cases involving Mother. Notwithstanding OCY's arguments, on March 16, 2001, the Orphans' Court issued an order denying OCY's request for a hearing on its involuntary termination of parental rights petition, and further denying OCY's ,motion to dismiss Mother's voluntary relinquishment petition.[6] This timely appeal followed.

¶ 4 On appeal, OCY asks this Court to consider:

I. Whether the lower court erred in failing to require strict compliance with the Adoption Act and Rules of [Orphans'] Court Procedure as to the filing and granting of the voluntary relinquishment of parental rights petition?

II. Whether the lower court erred by imposing a reasonableness standard as a condition to an agency [withholding] joinder and consent to a voluntary relinquishment petition?

III. Whether the lower court erred by refusing to grant appellant a hearing on its petition to involuntarily [terminate] parental rights when said petition was properly before the court?

IV. Whether the lower court erred in holding that a parent has a constitutional right to give up their rights to their child under a substantive due process analysis?

(Appellant's Brief, at 2.)

■ ¶ 5 We first note our standard of review when considering an appeal from the Orphans' Court:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re Estate of Presutti,* 783 A.2d 803, 805 (Pa.Super.2001) (citation omitted).

■ ¶ 6 In analyzing whether the Orphans' Court erred in imposing a reasonableness standard with respect to OCY's refusal to consent to Mother's voluntary relinquishment petition, we observe that the Orphans' Court noted that the reason behind OCY's refusal to consent to Mother's petition appeared to be an attempt by OCY "to gain a tactical advantage in future proceedings not yet ripe for judicial determination. For instance, if the Agency is successful in an involuntary termination proceeding, it will have the ability to seek a finding of aggravated circumstances in any future case involving this parent." (Orphans' Court Opinion, 3/16/01, at 2 n. 2.) Indeed, in its brief to this Court, OCY acknowledges:

Under the *Adoption and Safe Families Act,* if the mother's rights were [involuntarily] terminated, she would then be subject to a finding of Aggravated Circumstances in any dependency proceeding involving future children. The consequence of an Aggravated Circumstances Finding against her is that the Agency and the Court could decline to make reasonable efforts to reunite the family and the Agency would be relieved of the burden of providing services to the mother.

(Appellant's Brief, at 15 (emphasis original).) After a thorough review of the rec-

---

**6.** Mother's petition for voluntary relinquishment of parental rights with respect to A.J.B. was granted, and Mother's parental rights were terminated on April 3, 2001.

ord, we conclude that the Orphans' Court did not err in imposing a reasonableness standard with respect to OCY's refusal to consent to Mother's voluntary relinquishment petition.

¶ 7 Our research reveals no Pennsylvania case law involving a situation in which an agency files a petition to involuntarily terminate a parent's parental rights, but then refuses to consent to a petition to voluntarily relinquish parental rights filed by that same parent. However, we find the Orphans' Court's reliance on our Supreme Court's opinion in *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992) to be reasonable. In *Adoption of Hess*, two minor children, ages four and five, were placed in the custody of the Family and Children's Service of Lancaster County ("FCS") by their birth parents. Subsequently, the birth parents executed consents to adoption, and the children were placed in an adoptive home. FCS filed a petition to confirm consents, and following a hearing, a final decree was issued confirming the consents and terminating the birth parents' parental rights. Upon learning that the birth parents' parental rights had been terminated, the children's paternal grandparents, who at one time lived with the children, and who had obtained custody of their siblings, filed a complaint for custody and petitioned to intervene in adoption proceedings.

¶ 8 The trial court granted FCS's preliminary objections and dismissed the grandparents' petition without a hearing. The grandparents appealed to this Court, and we reversed and remanded for a hearing on the grandparents' petition and complaint, having determined that in ascertaining the best interests of the child, the trial court must consider all evidence bearing on those interests. *See In re Adoption of Hess*, 386 Pa.Super. 301, 562 A.2d 1375 (1989). FCS appealed our decision to the Pennsylvania Supreme Court, which affirmed.

¶ 9 In affirming this Court's holding, our Supreme Court addressed, *inter alia*, an argument by FCS that the grandparents' intervention in the adoption proceedings would be futile, in that FCS's consent was required before any adoption could take place and FCS did not intend to consent to an adoption by the grandparents. The basis for FCS's refusal to give its consent was its belief that there existed a possibility for conflict between the grandparents and the natural parents. Our Supreme Court first noted that "it is clear from the [Adoption] Act that the court's concern is not the will of the agency but the best interests of the child." *Adoption of Hess*, 530 Pa. at 226, 608 A.2d at 14. The Court further stated:

the Act makes clear that the court has the final burden of determining whose consent is necessary. The language of 23 Pa.C.S. § 2713(2) provides that "[t]he court, in its discretion, may dispense with consents other than that of the adoptee to a petition for adoption when … the adoptee is under 18 years of age and has no parent living whose consent is required." … Accordingly, it seems clear that if the court determines that the agency's consent is being withheld unreasonably, the court may dispense with the requirement of § 2711(a)(5) that the agency consent to the adoption.

*Id.*

¶ 10 Instantly, OCY concedes that its reason for refusing to consent to Mother's voluntary relinquishment petition is that by terminating Mother's parental rights to A.J.B. via an involuntary termination petition, Mother would be subject to a finding of aggravated circumstances in any future dependency proceeding involving other children. As stated above, the result of a finding of aggravated circumstances in future proceedings would allow OCY and the Orphans' Court to "decline to make reasonable efforts to reunite the family and the Agency would be relieved of the bur-

den of providing services to the mother." (Appellant's Brief, at 15.) We find this position by OCY to be clearly self-serving, and believe that it fails to consider the best interests of A.J.B. As the Orphans' Court aptly noted:

> In this case the mother is willing to accept the fact that she is too young and immature to raise her child and will enter a voluntary relinquishment. This will serve the child's best interests just as well as an involuntary termination. Moreover, it will result in an adoption. However, neither this Court, nor the Agency, can presume that the Agency will prevail at an involuntary termination trial. If it does not, and if the Mother later decides not to relinquish, the child's permanency goal will not be met.

(Orphans' Court Opinion, 3/16/01, at 12.)

¶ 11 Additionally, we note that A.J.B. has been in the care and custody of OCY since November 9, 1999. OCY filed a petition to terminate Mother's parental rights to A.J.B. so that the child could be placed for adoption. These circumstances evidence OCY's implicit consent to accept custody of A.J.B.

¶ 12 Moreover, there is a strong public policy interest that is served by dispensing with the requirement of an agency's consent to a voluntary relinquishment petition under the circumstances of a case such as this. Certainly, this Court is aware of the tragic consequences that can result when a birth mother feels hopeless and without recourse when faced with her own inability to cope with parenting a helpless child. Where a parent believes that he or she cannot provide adequate care for a child, or where a parent has abused or neglected or is likely to abuse or neglect a child, it would be imprudent for this Court to place impediments in the way of the voluntary relinquishment of parental rights to a child who previously has been adjudicated de-

pendent. If OCY is permitted to withhold unreasonably its consent to a voluntary relinquishment petition and insist instead on an involuntary termination of parental rights for the sole reason of being able to apply aggravating circumstances to any future dependency proceeding, it is possible that a parent will refrain from voluntarily relinquishing his or her parental rights under the appropriate circumstances, based on a fear of the agency's opposition or the consequences in future proceedings. Such an effect could have tragic results in the event an agency is unsuccessful in its petition to involuntarily terminate a parent's parental rights, not only by frustrating the agency's goal of placing the child in a permanent adoptive home, but perhaps by returning a child to a home where he or she is at risk of further abuse or neglect.

■ ¶ 13 With regard to OCY's allegation that the Orphans' Court erred in refusing to grant its motion to dismiss Mother's voluntary relinquishment petition because Mother failed to comply with certain procedural requirements as set forth in Pennsylvania's Orphans' Court Rules, we note that Rule 2.1 of the Orphans' Court Rules provides that the rules

> shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties in interest.

Pa. Orphans' Court Rule 2.1.

¶ 14 OCY argues that this Court and our Supreme Court have held that strict compliance with the legislative provisions of the Adoption Act is required. However, the cases cited by OCY in support of its argument concern the satisfaction of the requirements of the Adoption Act. Instantly, OCY's request that Mother's vol-

untary relinquishment petition be dismissed was based on Mother's failure to comply with specific provisions of the Orphans' Court Rules. In view of the specific language of Rule 2.1, which provides for the liberal construction of the Rules, we conclude that the Orphans' Court did not err in refusing to grant OCY's motion to dismiss.[7]

■ ¶ 15 Finally, we reject OCY's claim that the Orphans' Court erred in refusing to grant a hearing on its petition to involuntarily terminate Mother's parental rights. An involuntary termination hearing was scheduled to take place on December 21, 2000; however, when Mother appeared on that day, she orally indicated that she wished to relinquish her parental rights voluntarily. At that time, the Orphans' Court continued the proceeding in order to allow Mother twenty days to file the appropriate petition, noting that OCY would then have the option of opposing or consenting to Mother's petition. In addition to the fact that OCY fails to cite any support for its argument that it was entitled to a separate hearing on its involuntary termination petition, it is clear that OCY had the opportunity to present evidence as to why it believed Mother's parental rights should be terminated involuntarily during the hearing on Mother's voluntary relinquishment petition on March 1, 2001. Thus, we find no merit to OCY's claim that the Orphans' Court

erred in denying its request for a separate hearing on its petition for involuntary termination of Mother's parental rights.

¶ 16 For all of the reasons set forth above, we affirm the March 16, 2001 Order of the Orphans' Court dismissing OCY's petition for involuntary termination of Mother's parental rights with respect to A.J.B. and denying OCY's motion to dismiss Mother's voluntary relinquishment petition.[8]

¶ 17 Order affirmed.

---

7. We note that in the case of *In re Adoption of W.C.K*, 748 A.2d 223 (Pa.Super.2000), cited by OCY in support of its argument that the Orphans' Court did not have jurisdiction to hear Mother's petition to voluntarily relinquish her parental rights, this Court held that the Orphans' Court did not have jurisdiction because the couple seeking to terminate the mother's parental rights did not stand *in loco parentis* to W.C.K., and, therefore, lacked standing to file a cause of action under the Adoption Act. *See* 23 Pa.C.S. § 2512(a). Neither our decision in *W.C.K.*, nor any of the other cases cited by OCY, was based on the

party's failure to adhere to the Orphans' Court Rules.

8. We note that in its brief to this Court, OCY also argued that the substantive due process analysis employed by the Orphans' Court was unnecessary. We agree that such an analysis was unnecessary in the instant case, and do not engage in such an analysis to reach our determination herein. Thus, we conclude that further discussion regarding this issue is not warranted here.