## In re E.K.

C.P. of Northampton County, no. 1969-1222 OC.

*Daniel G. Spengler,* for petitioner.

FREEDBERG, *P.J.,* October 24, 2001—This matter is before the court on a petition for release of identifying information from the court file of an adoption which occurred in this county in 1970. Petitioner is an adult who seeks the identity of his full brother who was placed

for adoption by their natural parents. Petitioner suffers from refractory Hodgkin's disease and needs a bone marrow transplant.

Gerard Donnelly M.D., is petitioner's attending physician on the Lymphoma Service of Memorial Sloan-Kettering Cancer Center in New York. He reports that petitioner has not responded to standard chemotherapy. He is now undergoing salvage chemotherapy to prepare him for an allogenic stem cell (bone marrow) transplant. The doctor states:

"Due to the refractory nature of the disease, allogenic stem cell transplantation is [the petitioner's] only hope for a curative outcome. Ideally, patients have the best chance to survive the rigors of transplant if they have a compatible (HLA matched) donor from a sibling. Patients who receive stem cells from a related donor have the highest potential for cure and survival.

"When the patient is transplanted with the bone marrow from an unrrelated matched donor the risk of acute complications such as graft rejection and fatal graft-versus-host disease are more likely.

"[The petitioner's] siblings have been tissue typed and are not compatible matches for an allogenic transplant. While we have initiated a search in the National Marrow Donor Registry for an unrelated donor, it has come to our attention that [the petitioner] has another sibling who was given up for adoption at birth.

"We are requesting your assistance to have [the petitioner's] brother agree to have a blood sample drawn to assess whether he is an HLA-compatible marrow donor.

While this may be difficult for the brother from a social and emotional perspective, it gives him the opportunity, in a broader sense, to perform a potentially life-saving act of kindness to another human being with minimal or no harm or risk to himself.

"I cannot state strongly enough that not only does this represent [the petitioner's] only curative option, should [the petitioner's] brother be a compatible donor, it significantly reduces [the petitioner's] considerable risk of morbidity and mortality during the transplant course."

Thus, petitioner's only hope for a cure is a bone marrow transplant. The chances for success are significantly better if the donor is related. Other related donors have been tested and do not qualify. The child placed for adoption in 1970 offers the best hope for HLA-compatible marrow and petitioner's best hope for life.

The Pennsylvania Adoption Act, 23 Pa.C.S. §2101 et seq., provides generally that adoption records shall be "withheld from inspection except on an order of court granted upon cause shown." 23 Pa.C.S. §2905(a).[1]

In *In re Matter of Long,* 745 A.2d 673 (Pa. Super. 2000), the court provided guidance as to the application of section 2905(a). "*Good* cause" must be shown for unsealing. *Id.* at 675; but, see *In re Adoption of B.E.W.G.,* 355 Pa. Super. 554, 561, 513 A.2d 1061, 1065 (1986) (suggesting that "cause shown" is a lower standard than

---

1. Subsection (b) authorizes a court to provide to an adoptee non-identifying information about the natural parents and subsection (c) authorizes the court's agent to attempt to contact the natural parents to obtain their consent for contact from the adoptee.

"good cause shown"). Petitioner is required to prove the existence of "good cause" by clear and convincing evidence. *Long,* 745 A.2d at 675. Further, the court "must consider the ramifications to those specifically affected by the unsealing, including the adoptive and biological parents and their families, as well as the impact on the integrity of the adoption process in general. Only if the adoptee's need for the information clearly outweighs the considerations behind the statute may the records be unsealed." *Id.*

In *In re Petition to Release Adoption Records (Appeal of Kasparek),* 439 Pa. Super. 273, 653 A.2d 1254 (1995), Judge Wieand described the interests sought to be protected by the general requirement that adoption records be sealed. He wrote:

"Adoption records were initially sealed to protect the best interests of the adoptee. At least during the adoptee's childhood, sealed records are generally considered by most authorities to be in the best interest of the adoptee. Some courts have found that the birth parents also have a constitutionally based privacy interest in keeping adoption records sealed. See *Mills v. Atlantic City Dept. of Vital Statistics,* 148 N.J. Super. 302, 372 A.2d 646 (1977). Then, too, adoptive parents have an interest in keeping the record sealed, for after raising the child, they do not wish to lose their place in his or her life. Finally, the state has an interest in keeping adoption records sealed. It seeks to accomplish three goals: (1) to protect the welfare of the child; (2) to protect the adoptive family which the state has created; and (3) to ensure the integrity of the adoption process. See comment, 'Severed Roots: The

Sealed Adoption Records Controversy,' by Arndt, 6 Northern Illinois University Law Review 103 et seq. (1986)." *Kasparek,* 439 Pa. Super. at 277, 653 A.2d at 1256.

Unlike the *Long* case, *supra,* in the instant case, petitioner is not the adoptee. Section 2905(a) does not preclude non-adoptees from petitioning for unsealing. The legislature recognized that circumstances may arise where good cause could be shown by others. However, because the adoptee is not the petitioner, we must consider the possibility that the adoptee with whom contact is sought may not know of the adoption. In 1970, the adoptee was an infant. Now, the adoptee is 32 years old. As noted in *Petition to Release Adoption Records, supra,* the concern for the privacy of the adoptee is greater during the adoptee's childhood. Because the adoptee is now well into adulthood, the concern for emotional harm to the adoptee from the possibility that adoptee is unaware of the adoption is lessened. Further, it is only speculation that the adoptee is unaware of the adoption.

The adoptive parents, who would be in their 70s if they survive, may have an interest in keeping the record sealed. This is especially so if they did not disclose the adoption to the adoptee. But in weighing this possible interest, the passage of 32 years during which they have had the opportunity to engraft the adoptee onto their family tree diminishes the concern that contact on petitioner's behalf might disrupt their relationship with the child they raised.

The birth parents have executed consents to the release of the information sought by petitioner. Thus, they

have waived any privacy interest which they have in keeping the record sealed.

The Commonwealth's interest in keeping adoption records sealed is protected by the statutory requirement of cause for issuance of a support order and the standards set forth in *Long, supra.* Further, it is important to note the Commonwealth's significant interest in preserving life, *In re Fiori,* 543 Pa. 592, 608, 673 A.2d 905, 910 (1996), a factor which strongly supports unsealing in this case.

Petitioner's need for contact with the adoptee to request testing and possible participation in the bone marrow transplant is urgent. He will die without the bone marrow transplant. The risk of morbidity and mortality may be significantly reduced if the donor is his sibling. Further, it is questionable whether a compatible unrelated donor can be found in time to help petitioner. The petitioner's need clearly and convincingly outweighs the considerations for continued sealing of the adoption records. There is "good cause" to permit the contact.

The procedure for contacting the adoptee ought to be as minimally intrusive as possible. Therefore, we will require that a representative of the Children, Youth and Families Division of Northampton County attempt to find the adoptee. If successful, the representative shall advise the adoptee of the reason for the contact and explain the nature of the medical testing and possible bone marrow transplant procedure. Petitioner may provide the representative with information about the testing and bone-marrow procedure to be conveyed to adoptee. The representative shall offer the adoptee three options: to

accept direct contact from petitioner; to decline disclosure of adoptee's identity and whereabouts, but to agree to participate in, the testing and bone-marrow transplant procedure; or to decline disclosure and decline participation in the testing and bone-marrow transplant procedure.

Wherefore, we enter the following:

## ORDER

And now, October 24, 2001, the petition for unsealing pursuant to 23 Pa.C.S. §2905(a) is granted. The director of the Children, Youth and Families Division of Northampton County shall designate a staff member to perform the duties designated in the last paragraph of the attached opinion.