J-S35005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.B.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 397 EDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-1090-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: B.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 398 EDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0000975-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: J.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 399 EDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0000974-2016

IN THE INTEREST OF: J.B.I., A MINOR     :     IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: A.B., MOTHER     :

:
:
:
:
:
:
:
:

:     No. 400 EDA 2019

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-1091-2017

IN THE INTEREST OF: C.B.I., A MINOR     :     IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: A.B., MOTHER     :

:
:
:
:
:
:
:
:

:     No. 401 EDA 2019

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-1089-2017

IN THE INTEREST OF: C.I., A MINOR     :     IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: A.B., MOTHER     :

:
:
:
:
:
:
:
:

:     No. 402 EDA 2019

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0000950-2016

J-S35005-19

BEFORE:   OLSON, J., STABILE, J., and STRASSBURGER*, J.*

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 16, 2019**

In these consolidated appeals, A.B. ("Mother") appeals from the decrees entered by the Court of Common Pleas of Philadelphia County on January 11, 2019, voluntarily relinquishing Mother's parental rights to her three children, C.I., a/k/a C.B.I., ("Child 1") (a male, born in October of 2008), J.I., a/k/a J.B.I. ("Child 2") (a male, born in April of 2006), and E.I. a/k/a B.I. ("Child 3") (a female, born in October of 2008) (collectively, "the Children"), confirming her consent to adoption, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2504, and changing the permanency goals for the Children to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

In its opinion, the trial court set forth the following factual and procedural background:

> [Philadelphia] Department of Human Services ("DHS") [or (the "Agency")] became involved with this family on May 5, 2015, after DHS received a General Protective Services ("GPS") report alleging that [the] family was active with the Delaware County Children and Youth Department ("CYD"); in May 2014, Child 1 had been found unsupervised in a hotel in Montgomery County, Pennsylvania; police contacted Mother, who was believed to be intoxicated; Mother failed to retrieve Child 1[,] and Child 1 had been placed in foster care; Child 1 was scheduled to be reunified with Mother that day; Child 1 was diagnosed on the autism

---

* Retired Senior Judge assigned to the Superior Court.

[1] On January 11, 2019, J.I. ("Father") voluntarily relinquished his parental rights to the Children.  Father is not a party to this appeal, nor has he filed a separate appeal.  *See* Trial Court Opinion, 3/27/19, at 3 n.2.

- 3 -

spectrum and was nonverbal, although he was able to communicate his wants and needs; Child [1] received care from Behavioral Health Rehabilitation Services ("BHRS") through Devereaux; Mother had a history of drug use; in December 2014, Mother tested positive for benzodiazepines; Mother had stated that she had a prescription for the drug but failed to provide documentation; Mother recently obtained housing; Mother was employed; [and] Mother gave a negative drug screen on January 5, 2015. This GPS report was substantiated[,] and DHS implemented Family Empowerment Services [("FES")].

On April 18, 2016, DHS received a GPS report alleging that on April 15, 2016, Child 1's teacher observed that Child 1 had bruising on both of his thighs; Child 1 was examined by the school nurse, who stated that Child 1 had bruising on his lower body, legs, and buttocks; it appeared that Child 1 had been hit and that the injuries were not self-inflicted; Child 1 was on the autism spectrum and was nonverbal; Child 1 exhibited impulsive behavior; [and] it was unknown as to how Child 1 was injured. This report was indicated. On April 19, 2016, DHS visited Mother's home to investigate the allegations of the GPS report, but no one was home[.] DHS left a notification letter advising Mother to contact DHS. On April 20, 2016, DHS visited Child 1's school to speak with staff and examine photographs of Child 1's injuries, which DHS found to be substantial. School staff indicated to DHS that Child 1 had come to school with a black eye [in] March [] 2016. On that same day, DHS obtained an Order of Protective Custody ("OPC") for Child 1 and transported him to DHS.

On April 20, 2016, [the] Children's maternal grandmother ("Maternal Grandmother") contacted DHS and stated that she was willing and able to care for [the] Children. Maternal Grandmother was determined to be an appropriate caregiver for [the] Children. On that same day, DHS transported Child 1 to Maternal Grandmother's home. DHS developed a safety plan for [the] Children in which Maternal Grandmother would ensure that [the] Children attended school, [Maternal Grandmother would meet the] Children's basic daily needs, and Mother would not have any unsupervised contact[] with [the] Children. Mother stated that Child 1 sustained his injuries when he fell down the stairs and [she] did not seek medical attention because she did not believe his injuries were serious. Mother also indicated that Father was an indicated perpetrator of sexual abuse against [the] Children.[1] Later that day, DHS transported Child 1 to St. Christopher's

- 4 -

Hospital for Children ("Children's Hospital") for a medical evaluation and treatment. Hospital staff indicated that Child 1's injuries were not consistent with Mother's explanation.

On April 22, 2016, a shelter care hearing was held for Child 1. The trial court lifted the OPC and ordered Child 1's temporary commitment to DHS to stand. DHS was also ordered to obtain an OPC for Child 2 and Child 3 forthwith. Mother was ordered to attend supervised, line-of-sight visits with Child 1 prior to the adjudicatory hearing[,] and Mother was prohibited from visiting Child 1 in Maternal Grandmother's home. On that same day, DHS obtained an OPC for Child 2 and Child 3. [The] Children remained in the care of Maternal Grandmother. On April 25, 2016, a shelter care hearing was held for Child 2 and Child 3. The trial court lifted the OPC and ordered the temporary DHS commitment to stand.

On May 2, 2016, an adjudicatory hearing was held for [the] Children. Mother was present for this hearing. The trial court deferred the adjudication and ordered that the temporary commitment to DHS stand. The trial court ordered that all services for [the] Children continue[,] and that the Community Umbrella Agency ("CUA") follow up with any services for [the] Children. The trial court granted the joint request of counsel for a continuance for further investigation[,] and ordered that the prior visitation order stand.

On May 14, 2016, a Single Case Plan ("SCP") meeting was held for [the] Children. Mother was present for this meeting. Mother's parental objectives were to continue to cooperate with CUA services; follow up with the Achieving Reunification Center ("ARC") for appropriate services; comply with all court orders and maintain visitation as allowed; follow up with the Autism Center to secure all available services for Child 1; follow the Clinical Evaluation Unit ("CEU") recommendations; comply with three random drug screens and participate in a dual diagnosis assessment as well as monitoring; and attend a Parenting Capacity Evaluation ("PCE").

On June 6, 2016, [the] Children were adjudicated dependent and fully committed to DHS. The trial court ordered that Mother be referred to the CEU for a forthwith drug screen, three random drug screens, a dual diagnosis assessment, and monitoring. The trial court also ordered that Mother was prohibited from visiting [the]

Children at the home of Maternal Grandmother[,] and that Mother be referred for a PCE.

Between September 2016 and November 2017, six permanency review hearings were held for [the] Children. Mother was present for almost all [of the] permanency review hearings. On December 5, 2016, the trial court determined that Mother was in contempt of court after violating the court order prohibiting contact with [the] Children outside of supervised visitation. The trial court ordered that Mother be detained for 30 days and that she was not to be discharged until the case returned to court. The trial court issued a stay-away order against Mother as to [the] Children. Mother was released from incarceration on January 13, 2017.[2] Mother's visits with [the] Children have remained suspended since December 5, 2016.

[The] Children have been in DHS care since April 18, 2016. Mother [] failed to consistently comply with her objectives and comply with court orders throughout the life of the case. Mother continues to struggle with her addiction. DHS filed a petition to involuntarily terminate Mother's parental rights and change [the] Children's permanency goal to adoption on November 7, 2017.

On November 9, 2017, a permanency review hearing was held for [the] Children. Mother was present for this hearing. The trial court determined that the stay[-]away order as to Mother was to stand[,] and that Mother's visitation remained suspended. On December 11, 2017, Mother appealed the November 9, 2017 [order]. On September 7, 2018, [the] Superior Court of Pennsylvania dismissed Mother's appeal after [Attorney Mario D'Adamo, III, former counsel for Mother ("Former Counsel")] failed to file a brief.

In 2018, five permanency review hearings were held for [the] Children. Mother was present for most of these hearings. At these hearings, the trial court ordered that visitation between Mother and [the] Children [was] only to occur at the recommendation of [the] Children's therapists. At the November 13, 2018, [termination of parental rights] hearing Mother indicated that she was interest[ed] in voluntarily relinquishing her parental rights to [the] Children. On that same day, Mother signed the voluntary relinquishment of her parental rights ("VOLS") [and consents to adoption], and the trial court, nevertheless, heard evidence as to the termination and goal change petitions. . . . The trial court

- 6 -

entered continuance orders in the termination and goal change matters, holding in abeyance its decisions as to termination [and on the goal change petitions.] DHS filed [Mother's] Petition for VOLS [and consents to adoption] on November 21, 2018. On December 18, 2018, Mother notified Former Counsel that she wished to revoke her voluntary relinquishment[s and consents]. N.T. 01/11/19, at 13.

On January 11, 2019, the trial court, presided [over] by Judge Joseph Fernandes, held the hearing to confirm the consent[s to adoption] signed by Mother on November 13, 2018. The trial court concluded that Mother knowingly and voluntarily signed the voluntary relinquishments of her parental rights to [the] Children [and consents to adoption] on November 13, 2018, and did not revoke her signature within the 30 days, as prescribed by 23 Pa.C.S.A. § 2711(c)(1)(ii). [On January 11, 2019, the trial court entered the decrees confirming Mother's consents to adoption, terminating Mother's parental rights to the Children, and withdrawing the petitions for involuntary termination (which erroneously said voluntary termination); *see* N.T., 1/11/19, at 31. On that same date, the trial court also entered the permanency review orders changing the Children's permanency goals to adoption.]

_____

[1] On September 6, 2013, Father was arrested and charged with two counts each of involuntary deviate sexual intercourse with a child, unlawful contact with a minor - sexual offenses, sexual assault, indecent assault of a person less than 13 years of age, corruption of minors, and aggravated indecent assault of a child, where Child 2 and Child 3 were the complainants. On October 27, 2014, the court granted a [m]otion for [n]olle [p]rosequi as to all of the charges against Father[.]

[2] From May 2, 2016 to March 19, 2018, the trial judge assigned to these matters was the Honorable Lyris Younge. After June 22, 2018, these matters were assigned to the Honorable Joseph Fernandes. Judge Fernandes presided over the proceedings currently at issue.

Trial Court Opinion, 3/27/19, at 1-5 (footnotes in original).[2]   On February 6,

2019, Mother timely filed separate notices of appeal, along with concise

statements raising six issues for each of the Children.[3]

In her counseled brief on appeal, Mother raises the six issues that follow:

A. Whether the [t]rial [c]ourt erred by changing the [Children's] goal to adoption and terminating [the] parental rights of Appellant Mother, under 23 Pa.C.S.A. [§] 2511(a)(1) and (2), (5), and (8)[?]

_____

[2] The trial court appears to use the terms "voluntary relinquishment" and "VOLS" interchangeably with consents to adoption.  However, in this matter as discussed at length below, DHS proceeded on the consents for adoption that Mother executed, and not the voluntary relinquishments that she signed. **See** N.T., 1/11/2019, at 28-31.

[3] On February 6, 2019, Former Counsel filed a timely notice of appeal with a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) ("concise statement") for each of the Children.  Former Counsel also filed a motion for leave to withdraw as counsel.  On February 7, 2019, Former Counsel filed amended concise statements.  On February 13, 2019, the trial court granted Former Counsel's motion to withdraw, and appointed Attorney Athena Dooley as counsel for Mother for appeal purposes, only.  **See** Trial Court Opinion, 3/27/19, at 1.  On June 10, 2019, Attorney Dooley filed a motion to withdraw as Mother's counsel with this Court, citing a conflict with Mother as to Mother's desire to file a *pro se* reply brief to the brief of the Philadelphia Department of Human Services ("DHS").  Attorney Dooley also filed a motion for extension of time for Mother to file a *pro se* reply brief.  On June 24, 2019, this Court denied both motions.  Mother did not challenge our June 24, 2019 denial order; however, Mother retained Attorney Mark R. Ashton who subsequently filed a reply brief on behalf of Mother, which this Court, by order filed on July 22, 2019, deemed filed as of July 17, 2019.  In the same July 22, 2019 order, this Court denied Mother's request for oral argument on her counseled reply brief.  Although we initially denied Attorney Dooley's motion to withdraw, by our order accepting Attorney Ashton's reply brief on behalf of Mother, we have effectively permitted Attorney Dooley to withdraw and allowed the appearance of Attorney Ashton on behalf of Mother.

B. Whether the [t]rial court erred in terminating [Mother's] parental rights under 23 Pa.C.S.A. [§] 2511(a)(2), the evidence having been insufficient to establish Mother caused [the Children] to be without essential parental care, nor could that not have been remedied[?]

C. Whether the [t]rial Court erred by finding, under 23 Pa.C.S.A. [§] 2511(b), that termination of [Mother's] rights best serves the Child[ren]'s developmental, physical and emotional needs and welfare[?]

D. Whether the [t]rial [c]ourt erred by disallowing [Mot]her the opportunity to voluntarily relinquish Appellant's parental rights[?]

E. Whether the [t]rial [c]ourt erred by denying [Mother's] constitutional right to voluntarily give up [Mother's] parental rights under a substantive due process analysis[?]

F. Whether the [t]rial [c]ourt erred by not accepting [Mother's] revocation of [her] voluntary relinquishment of parental rights[?4]

Mother's Brief, at 3.

Before we examine the merits of this case, it is necessary to explain the confusing legal procedural framework surrounding this case. In this case, as previously noted, Mother signed voluntary relinquishments of her parental rights at the same time that she executed consents for adoption for all of the Children. Pertinent to this appeal, 23 Pa.C.S.A. § 2711 governs consents necessary to adoption. Section 2711 provides in pertinent part as follows:

**§ 2711.  Consents necessary to adoption**

_____

4    As will be explained below, although Mother frames this issue as one involving the revocation of her voluntary relinquishment of parental rights, the argument presented deals with Mother's efforts to revoke her consent to adoption.  Because this issue is dispositive, we will address it first.

**(a) General rule.**—Except as otherwise provided in this part, consent to an adoption shall be required of the following:

\* \* \*

(3) The parents or surviving parent of an adoptee who has not reached the age of 18 years.

\* \* \*

**(c) Validity of consent.—**No consent shall be valid if it was executed prior to or within 72 hours after the birth of the Child. A putative father may execute a consent at any time after receiving notice of the expected or actual birth of the Child. Any consent given outside this Commonwealth shall be valid for purposes of this section if it was given in accordance with the laws of the jurisdiction where it was executed. **A consent to an adoption may only be revoked as set forth in this subsection**. The revocation of a consent **shall be in writing** and shall be served upon the agency or adult to whom the Child was relinquished. The following apply:

(1) Except as otherwise provided in paragraph (3):

\* \* \*

(ii) For a consent to an adoption executed by a birth-mother, **the consent is irrevocable more than 30 days after the execution** of the consent.

(2) An individual may not waive the revocation period under paragraph (1).

(3) Notwithstanding paragraph (1), the following apply:

(i) An individual who executed a consent to an adoption **may challenge the validity of the consent only by filing a petition alleging fraud or duress** within the earlier of the following time frames:

> (A) **Sixty days after** the birth of the Child or the **execution** of the consent, whichever occurs later.
>
> * * *
>
> (ii) A consent to an adoption may be invalidated **only if** the alleged fraud or duress under subparagraph (i) is proven by:
>
> > (A) a preponderance of the evidence in the case of consent by a person 21 years of age or younger; or
> >
> > (B) clear and convincing evidence in all other cases.

**(d) Contents of consent.—**

(1) The consent of a parent of an adoptee under 18 years of age shall set forth the name, age and marital status of the parent, the relationship of the consenter to the Child, the name of the other parent or parents of the Child and the following:

I hereby voluntarily and unconditionally consent to the adoption of the above named Child.

I understand that by signing this consent I indicate my intent to permanently give up all rights to this Child.

I understand such Child will be placed for adoption.

I understand I may revoke this consent to permanently give up all rights to this Child by placing the revocation in writing and serving it upon the agency or adult to whom the Child was relinquished.

* * *

If I am the Birth-mother of the Child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after executing it by delivering a written revocation to (insert the name and address of the agency coordinating the adoption) or (insert the name and address of an attorney who represents the individual relinquishing parental rights or prospective adoptive parent of the Child) or (insert the court of the county in

which the voluntary relinquishment form was or will be filed).

I have read and understand the above and I am signing it as a free and voluntary act.

(2)    The consent shall include the date and place of its execution and names and addresses and signatures of at least two persons who witnessed its execution and their relationship to the consenter.

23 Pa.C.S.A. § 2711 (internal emphasis added).

"Section 2711 of the Adoption Act prescribes the requirements for consent and the procedure and timeframes for the revocation of a voluntary consent to adoption." *In re J.W.B.*, 2019 WL 3059772, at *4 (Pa. Super. filed July 12, 2019), *citing* 23 Pa.C.S.A. § 2711(a), (c), (d).

We have previously determined:

A party seeking to disturb a termination decree entered after a consent to relinquishment must show that the consent given to terminate parental rights was not intelligent, voluntary and deliberate. Section 2504 provides an alternative procedure for relinquishment as follows:

**§ 2504. Alternative procedure for relinquishment**

(a) Petition to confirm consent to adoption.—If the parent or parents of the child have executed consents to an adoption, upon petition by the intermediary or, where there is no intermediary, by the adoptive parent, the court shall hold a hearing for the purpose of confirming a consent to an adoption upon expiration of the time period under section 2711 (relating to consents necessary to adoption). The original consent or consents to the adoption shall be attached to the petition.

(b) Hearing.—Upon presentation of a petition filed pursuant to this section, the court shall fix a time for a hearing which shall not be less than ten days after filing of the petition. Notice of the hearing shall be by personal service or by registered mail ... Notice of the hearing shall be given to the

> other parent or parents ... and to the parents or guardian of a consenting parent who has not reached 18 years of age. The notice shall state that the consenting parent's ... rights may be terminated as a result of the hearing. After hearing, which shall be private, the court may enter a decree of termination of parental rights in the case of a relinquishment to an adult or a decree of termination of parental rights and duties, including the obligation of support, in the case of a relinquishment to an agency.

23 Pa.C.S.A. § 2504(a)-(b).

\* \* \*

> Section 2711(c) unequivocally states that a consent to an adoption may only be revoked as set forth in this subsection, and the revocation of a consent shall be in writing and shall be served upon the agency or adult to whom the child was relinquished. 23 Pa.C.S.A. § 2711(c).

\* \* \*

> An individual may not waive the revocation period. 23 Pa.C.S.A. § 2711(c)(2). Moreover, the statute precludes a challenge to the validity of the consent to adoption after 60 days following the birth of the child or the execution of the consent, whichever occurs later, and only upon a petition alleging fraud or duress. 23 Pa.C.S.A. § 2711(c)(3)(i)(A)-(B).

> This Court has held that Section 2711 renders a consent to adoption irrevocable more than thirty (30) days after execution, and the unambiguous language of the statute requires a trial court to consider the timeliness of a petition to revoke consent before it considers the merits. If the revocation is untimely, the court may not consider the merits of the revocation. The language of the statute plainly provides for time constraints to revoke and/or challenge the validity of a consent to adoption, and its purpose is to afford finality to the adoption process.

*Id.* at \*3–4 (internal quotations, case citations, and original brackets omitted).

Here, the trial court determined:

- 13 -

A parent may voluntarily relinquish their parental rights, and[,] pursuant to 23 Pa.C.S.A. § 2504, a parent may execute their consent to an adoption. If a parent wishes to voluntarily provide consent to the adoption of a child, the consent must be valid, pursuant to 23 Pa.C.S.A. § 2711(c). For a consent to an adoption executed by a birth mother, the consent is valid and irrevocable if revoked more than 30 days after the execution of the consent. 23 Pa.C.S.A. § 2711(c)(1)(ii). Mother may not waive the revocation period. *See* 23 Pa.C.S.A. § 2711(c)(2). The revocation must be timely, in writing, and served upon appropriate parties. *Id.* The language of this statute has been deemed to be unambiguous. *In re Adoption of J.A.S.*, 939 A.2d 403, 408-409 (Pa. Super. 2007). If a revocation is determined to be untimely, the trial court is unable to consider the merits of the revocation. *In re R.L.*, 172 A.3d 665, 667 (Pa. Super. 2017).

On November 13, 2018, Mother properly signed VOLS and the petition to confirm the consent for adoption of [the] Children. N.T. 01/11/19, at 12-24. Mother subsequently attempted to revoke the voluntary relinquishment of her parental rights to [the] Children on December 18, 2018, by informing Former Counsel. Former Counsel subsequently informed all counsel, via email, of Mother's attempted revocation on December 21, 2018. N.T. 01/11/19, at 12-13. The CUA case worker [sic] indicated that when Mother signed VOLS, Mother was explicitly informed that she had 30 days from the date of her signature to change her mind and that the decision would have to be made in writing to either the CUA case worker [sic] or to Former Counsel. N.T. 01/11/19, at 21. **At the time that Mother signed the VOLS, Former Counsel was present and colloquied Mother as to her understanding and whether she was under duress. Mother's answer was that she understood the meaning of VOLS and she was not under duress.** N.T. 01/11/19, at 17-21. Mother never attempted to make contact, either in writing or verbally, with the CUA case worker at any time to indicate her intention of revoking her VOLS. N.T. 01/11/19, at 25. The DHS witness['s] testimony was credible. Mother's communication with Former Counsel indicating her intent to revoke her voluntary relinquishment of her parental rights to [the] Children was untimely[,] as the communication occurred more than 30 days after Mother signed VOLS and the petitions to confirm the consent for adoption of [the] Children. Mother provided notice to Former Counsel of her attempt to revoke 35 days after her signature. Since Mother's revocation was untimely, the trial court did not err

or abuse its discretion by determining that Mother's revocation was untimely and that Mother knowingly and voluntarily relinquished her rights to [the] Children on November 13, 2018.

Trial Court Opinion, 3/27/2019, at 5-6 (emphasis added).[5]

In Mother's sixth issue as presented (issue F above),[6] she asserts that under 23 Pa.C.S.A. § 2711, she properly and timely gave notice of her revocation of consent to adoption of the Children by contacting Former Counsel who, in turn, notified DHS, the CUA, and the trial court. Mother's Brief at 5. Mother states that Former Counsel told Mother that he would convey her revocation decision and that he followed up with an e-mail

_____

[5] Again, we recognize that the trial court appears to use the terms "voluntary relinquishment" and "VOLS" interchangeably with consents to adoption. **See** N.T., 1/11/2019, at 28-31.

[6] We note that similar to the trial court, Mother seemingly conflates voluntary relinquishment of parental rights with consents to adoption. As noted above, while Mother claims in her questions presented section of her appellate brief that she is challenging the revocation of her voluntary relinquishment of parental rights, as discussed, she is actually relying upon her purported revocation of her consents to adoption for the Children. **See** Mother's Brief at 3.

Further, we note that neither the parties nor the trial court cites to a provision of the Adoption Act that governs a set procedure for the revocation of voluntary relinquishment of parental rights. Our independent research has not revealed any statutorily mandated procedure for doing so. However, there is no dispute that Section 2711 is applicable herein, because: (1) Mother executed both voluntary relinquishments and consents for adoption for all three Children at the same time; (2) Mother does not challenge the trial court's reliance upon Section 2711 in rendering its decision; and (3) as set forth above, 23 Pa.C.S.A. § 2504, provides an "alternative procedure for relinquishment" of parental rights, by confirming a consent to adoption under Section 2711.

notifying the court, DHS, and the CUA of Mother's desire to revoke her consents. Mother also claims that the trial court prevented her from filing a timely petition to challenge the validity of her consents pursuant to 23 Pa.C.S.A. § 2711(c)(3)(i)(A), because the trial court did not appoint new counsel, Attorney Dooley, until more than sixty days after Mother executed her consents. Mother's Brief at 5. Mother claims that she felt under duress to execute her consents to adoption because the trial court denied her request for a continuance of the November 13, 2018 hearing and denied her request to enter the appearance of new, private counsel, who was present at that hearing. *Id.* Mother also asserts that she felt under duress because of her inability to effectively communicate with her court-appointed counsel and/or to properly and effectively prepare for the November 13, 2018 hearing. *Id.*

We review the trial court's determination for an abuse of discretion or legal error. *In re Adoption of K.G.M.*, 845 A.2d 861, 863 (Pa. Super. 2004).

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*Id.*, *quoting In re A.J.B.*, 797 A.2d 264, 266 (Pa. Super. 2002).

Herein, the trial court correctly analyzed the alleged revocation under the controlling statutes, particularly Section 2711(c)(1)(ii) and Section 2711(c)(3)(i)(A), and controlling case law. The record supports the trial court's determination that Mother's efforts to revoke her consents to adoption

were untimely under the 30-day provision pursuant to Section 2711(c). Here, there is no dispute that Mother executed consents for adoption for the Children on November 13, 2018. As such, she had 30 days from that date, or until December 13, 2018, to provide written revocation to either her attorney-of-record or the Agency. There is no evidence suggesting, and Mother does not argue, that she contacted the Agency to revoke her consents to adoption. *See* N.T., 1/11/2019 at 24. However, Mother maintains that "[o]n November 30, 2018, [she] wrote to her counsel requesting copies of the documents she had signed on November 13, 2018, as well as any [o]rder entered by the [t]rial [j]udge that occurred during that month [and s]he renewed that request on December 11, 2018." Mother's Reply Brief at 6. Mother attached to her appellate reply brief e-mail correspondence from herself to Former Counsel dated November 30, 2018 and December 11, 2018 in support of her argument. While not a part of the certified record, upon our review of these documents, it is clear that Mother never requested revocation of her prior consents. Instead, Mother asked for copies of documents and transcripts from prior proceedings. She did not explicitly revoke her consents to adoption in her e-mails to Former Counsel.

Thereafter, the only additional record evidence of Mother's attempt to revoke her consents to adoption is a letter from Former Counsel to counsel for the Agency, dated December 21, 2018, wherein Former Counsel states that Mother sent him correspondence "on December 18, 2018" that "she wished to

revoke her voluntary relinquishment of parent[al] rights[.]" N.T., 1/11/2019, at 25-26; Agency Exhibit 1. Both Mother's request and Former Counsel's subsequent letter are plainly outside of the 30-day revocation period under Section 2711 and, therefore, the trial court was precluded from examining the merits of Mother's request for revocation of her consents to adoption. Thus, we discern no error of law or abuse of discretion in denying Mother's revocation of consent to adoption for the Children because she did not properly revoke her consent within the strictly construed requirements of Section 2711.[7]

_____

[7] Furthermore, Mother does not complain that she did not understand the procedure for revocation. DHS presented the testimony of the CUA caseworker, Precious Randall, who witnessed Mother's execution of the consents and voluntary relinquishments. Ms. Randall testified concerning Mother's execution of the consents and voluntary relinquishments, and whether Mother appeared to be under duress. N.T., 1/11/2019, at 14-24. Ms. Randall testified that Mother could read, write, and understand English, which is Mother's first language, and that Mother has a high school education. *Id.* at 17-18. Mother did not appear to be under the influence of alcohol, drugs, or any substance on November 13, 2018. *Id.* at 18. Ms. Randall did not observe anything that led her to believe that Mother experienced difficulty in understanding what she was doing on November 13, 2018. *Id.* at 19. Ms. Randall testified that she reviewed the petitions to confirm consent and to relinquish parental rights to the Children with Mother. *Id.* Ms. Randall stated that Former Counsel was present to assist Mother and explain the documentation. *Id.* at 19-20. Ms. Randall testified that Former Counsel asked Mother if she was under the influence of drugs or alcohol or if she was being paid to sign or receiving anything for signing the documents. *Id.* at 20. Mother responded in the negative to these questions. *Id.* at 20. Ms. Randall further stated that it was explained to Mother that her signature on the documents, if allowed to be presented in court, would result in the termination of her parental rights to the Children. *Id.* at 20-21. It also was explained to Mother that, if she wished to change her mind, she had 30 days from the date

Moreover, despite the untimeliness of Mother's request, the trial court permitted Mother to explain the basis for her untimely revocation at a January 11, 2019 hearing.[8] Mother unmistakably testified that she "changed her mind" and "still want[ed] to fight for [her] children" because she believed that she complied with all of DHS's directives for her reunification with the Children. N.T., 1/11/2019, at 28. Mother did not testify, however, that she wished to revoke her consents because she executed them under fraud or duress. Therefore, within 60 days of Mother's execution of the consents, the trial court

_____

of her signature to do so. *Id.* at 21. Further, it was explained to Mother that she would need to make a decision in writing, and provide it to either Ms. Randall or to Former Counsel. *Id.* Mother was not provided any promise or any threat from CUA or from counsel to obtain her signature on the documents, and she signed them on November 13, 2018. *Id.* at 21-23. Ms. Randall witnessed Mother's signature. *Id.* at 21. When she signed the documents, Mother had a pleasant demeanor. *Id.* at 23. After signing the documents, Mother, Former Counsel, and the witnesses, returned to the courtroom. *Id.* at 23. Based on the foregoing, we reject Mother's claim that she could not revoke her consent to adoption because the trial court prevented her from filing a timely petition to challenge the validity of her consents pursuant to 23 Pa.C.S.A. § 2711(c)(3)(i)(A) as the trial court did not appoint new counsel until more than sixty days after Mother executed her consents. As Section 2711 makes unequivocally clear, it was **Mother's** responsibility to revoke her consent, in writing, with either her attorney-of-record or the Agency.

[8] We observe that the January 11, 2019 hearing took place on the 59th day following Mother's execution of the consents to adoption on November 13, 2018. The hearing was held to confirm the consents to the voluntary relinquishments signed by both Mother and Father. At that time, Mother expressed her desire to revoke her voluntary consent to relinquish her parental rights to the Children. We note, however, that upon review of the certified record, Mother did not file a petition pursuant to Section 2711(c)(3)(i) alleging fraud or duress.

- 19 -

heard testimony regarding the basis for her revocation. Mother did not claim that she signed the consents to adoption under fraud or duress.[9] For all of the foregoing reasons, we find no merit to Mother's sixth issue.[10]

In sum, Mother had two established statutory procedures available to her to achieve her goal of negating her voluntary relinquishment of her parental rights. She could revoke her consents in writing to the Agency or counsel within 30 days. *See* 23 Pa.C.S.A. § 2711(c)(1)(ii). She failed,

---

[9] We note that Mother alleges that she was under duress for the first time on appeal to this Court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

[10] Because the trial court properly confirmed Mother's consents to adoption as an alternative procedure for the relinquishment of her parental rights, we need not address Mother's other issues as presented on appeal. Further, we note that Mother raises additional issues in her counseled reply brief that were not raised in her concise statement of errors complained of on appeal under Rule 1925(b). She challenges a prior judge's decision to remove the Children from kinship care and to incarcerate Mother for retrieving one of her sick children from school despite having only supervised visitation. *See* Mother's Reply Brief at 8. Mother also challenges the trial court's decision to continue to hear testimony regarding the involuntary termination of her parental rights while she left the courtroom to execute voluntary termination and consent-to-adoption forms. *Id.* at 8-12. In her reply brief, Mother also argues that "[t]he consent she did sign does not identify the adopting parents nor a waiver of the right to know their identity [pursuant to] 23 Pa.C.S.[A. §] 2712[.]" *Id.* at 14. Mother further contends that the trial court erred by failing to hold a hearing to confirm her consents within 10 days of signing them. *Id.* at 15. These issues were not raised before the trial court and we may not address them for the first time on appeal. *See Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006) ("An appellant's failure to include an issue in [her Rule] 1925(b) statement waives that issue for purposes of appellate review."); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

however, to timely invoke this procedure. Mother could also petition the court alleging fraud or duress within 60 days of executing her consents. **See** 23 Pa.C.S.A. § 2711(c)(3). Mother never filed a petition and never alleged fraud or duress before the trial court as grounds for challenging her prior consents. She simply stated that she changed her mind at a subsequent hearing. Because Mother did not comply with either of the statutorily mandated procedures for withdrawing her consents to adoption, we are constrained to affirm the trial court's decision confirming Mother's voluntary relinquishment of parental rights to the Children.[11] Accordingly, we affirm the decrees and orders with respect to each of the Children.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/19

---

[11] Finally, we recognize that there were irregularities regarding the termination procedure and note our dissatisfaction with the confusing way the trial court handled this case. However, as explained in detail above, the trial court did not err as a matter of law by denying Mother's request to revoke her consents to adoption.

- 21 -