J-S20001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1720 MDA 2024 |

Appeal from the Order Entered October 15, 2024
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s):  CP-28-DP-0000020-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1722 MDA 2024 |

Appeal from the Order Entered October 15, 2024
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s):  CP-28-DP-000021-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1723 MDA 2024 |

Appeal from the Order Entered October 15, 2024
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s):  CP-28-DP-000022-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: B.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1724 MDA 2024 |

Appeal from the Order Entered October 15, 2024
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s):  CP-28-DP-0000023-2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1737 MDA 2024 |

Appeal from the Decree Entered October 15, 2024
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s):  45 Adopt 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1738 MDA 2024 |

Appeal from the Decree Entered October 15, 2024
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s):  46 Adopt 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.L.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L.C., MOTHER | : : : : : : : | |
| | : | No. 1739 MDA 2024 |

Appeal from the Decree Entered October 15, 2024
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s): 47-ADOPT-2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: N.M.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L.C., MOTHER | : : : : : : : | |
| | : | No. 1740 MDA 2024 |

Appeal from the Decree Entered October 15, 2024
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s): 48-ADOPT-2024

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED: JULY 14, 2025**

J.C. a/k/a J.L.C. ("Mother") appeals from the October 15, 2024 decrees that permitted her to voluntarily relinquish her parental rights to her biological children: Au.S., born in April 2013; An.S., born in December 2014; and twins B.S. and N.S., born in October 2016 (collectively, "the Children").[1]

---

[1] In separate decrees also filed on October 15, 2024, the orphans' court permitted R.E.S. ("Father") to voluntarily relinquish his parental rights to the Children. Father did not appeal. He also did not participate in this appeal.

Separately, Mother has also appealed the orders entered on October 15, 2024, which changed the Children's respective permanency goals from reunification to adoption. Mother's court-appointed counsel ("Appellate Counsel") has submitted a petition to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967).[2] After careful review, we grant Appellate Counsel's petition to withdraw, affirm the underlying termination decrees, and dismiss the goal change appeals as moot.

We glean the relevant factual and procedural history of this matter from the certified record. We note that Mother and Father (collectively, "Parents") are not married and that the Children were born outside of Pennsylvania. Franklin County Children and Youth Services ("CYS" or "the Agency") has a long history of involvement with this family that began following their relocation to the Commonwealth. In February 2017, the Agency received a referral raising concerns of domestic violence. Between 2017 and 2020, the Agency received numerous additional referrals regarding, *inter alia*, substance abuse, inadequate nutrition, inappropriate discipline, and safety concerns. Beginning in 2021, CYS began receiving Child Protective Services ("CPS") reports of inappropriate discipline and visible injuries to the Children. These reports continued until May 13, 2022, when the Agency sought emergency protective custody due to escalating concerns regarding physical abuse. At

_____

[2] **Anders** applies in the context of termination of parental rights appeals. **See In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa. Super. 2020).

this point in time, the Children were residing solely with Father while Mother's whereabouts were unknown to the Agency.

The juvenile court granted the Agency's petition and transferred physical and legal custody of the Children to CYS. This finding was confirmed at a shelter care hearing on May 16, 2022. On May 31, 2022, the juvenile court filed an order that adjudicated the Children dependent and established their primary permanency goal as reunification with Parents with a concurrent goal of adoption. The Children were, ultimately, placed in separate foster homes.

In furtherance of reunification, Mother was ordered to, *inter alia*, undergo a parental fitness assessment, obtain appropriate housing and consistent employment, regularly participate in visitations with the Children, and maintain consistent communication with the Agency. Between August 2022 and June 2024, the juvenile court held regular permanency review hearings, wherein Mother's compliance with her objectives and overall progress ranged from minimal to moderate. Although Mother completed her parental assessment and maintained contact with the Children and the Agency, she neither obtained appropriate housing nor achieved financial stability. Additionally, Mother's mental health became a significant concern during the dependency proceedings, which required her to begin outpatient counseling and medication management. Indeed, Mother's mental instability also negatively impacted her ability to care for and supervise the Children, which the juvenile court identified as an ongoing safety concern.

On September 26, 2024, the Agency filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[3]  The orphans' court held a hearing on October 15, 2024, which was intended to address the Agency's petition.  Therein, Mother appeared with counsel and indicated her desire to voluntarily relinquish her parental rights to the Children pursuant to 23 Pa.C.S.A. § 2501.  **See** N.T., 10/15/24, at 3-4.

To that effect, Mother executed an acknowledgement and waiver for each of the Children and requested that the orphans' court permit her to relinquish her parental rights.  Thereafter, the orphans' court conducted an

---

[3]  In contested involuntary termination matters, our Supreme Court has endorsed limited *sua sponte* review to confirm that counsel is appropriately appointed for children pursuant to 23 Pa.C.S.A. § 2313(a).  **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020).  The High Court has also instructed that if the child's legal counsel also serves as guardian *ad litem*, the orphans' court must assess whether there is a conflict in the child's best and legal interests.  **See id**.  Since the termination proceedings were involuntary and contested when initiated, the orphans' court appointed Abigail J.W. Salawage, Esquire, to serve as the Children's dual legal interest counsel and guardian *ad litem*.  **See** Order, 10/1/24, at 1 (unpaginated).  In doing so, the orphans' court granted a petition filed by the Agency requesting that the court enter a finding that no conflict existed between the Children's best and legal interests.  **See** Motion for Appointment of Legal Counsel, 10/1/24, at ¶¶ 1-11.  As such, we discern the orphans' court accepted the Agency's arguments and thereby rendered an independent determination that there was no conflict in the Children's respective interests.  **Compare with Matter of Adoption of A.C.M.**, 333 A.3d 704, 708-09 (Pa. Super. 2025) (holding that it was "violative" of **K.M.G.** for an orphans' court to delegate to counsel the "responsibility to determine whether a conflict in dual representation existed").  Thereafter, however, Mother chose to pursue voluntary relinquishment, which rendered Attorney Salawage's representation unnecessary within the meaning of Section 2313(a).  Nonetheless, we note the orphans' court's compliance with Section 2313(a) since the character of these proceedings was not changed until the very day of the subject hearing.

on-the-record colloquy regarding voluntariness and Mother's understanding regarding the consequences of relinquishment. **See** N.T., 10/15/24, at 5-8. The attorney for the Agency also questioned Mother along similar lines. **See id**. at 10-12. At the conclusion of this portion of the hearing, the trial court reconvened in the role of the juvenile court and indicated that it would change the Children's primary permanency goal to adoption with a concurrent goal of subsidized permanent legal custody ("SPLC"). **See id**. at 17.

The same day as the hearing, the orphans' court filed separate decrees granting Mother's request for voluntary relinquishment and terminated her parental rights to the Children. Also on October 15, 2024, the orphans' court filed permanency review orders that changed the Children's respective permanency goals to adoption with a concurrent goal of SPLC.

On November 14, 2024, Mother timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) at each of the above-captioned cases. Mother's concise statements of errors complained of on appeal collectively raised one claim of error that generally challenged the procedural and evidentiary basis for the termination of Mother's parental rights. **See** Concise Statement, 11/14/24, at 1.[4] The orphans' court filed a Rule 1925(a)(2)(ii) opinion expressing its opinion that Mother had: (1) waived her claims regarding termination of her parental rights due to the lack of specificity in

_____

[4] Aside from different docket numbers, each concise statement is identical.

her concise statement; and (2) failed to present any arguable claims regarding the goal change orders. *See* Trial Court Opinion, 12/2/24, at 3-4.

On March 5, 2025, this Court consolidated the above-captioned cases *sua sponte*. On March 7, 2025, we vacated the appointment of Mother's original counsel due to client abandonment and remanded for the appointment of replacement counsel. On March 20, 2025, Appellate Counsel entered her appearance on Mother's behalf.

On April 11, 2025, Appellate Counsel submitted an application to withdraw along with a brief pursuant to *Anders*. Accordingly, we begin our review by assessing counsel's petition to withdraw and accompanying brief. *See In re Adoption of B.G.S.*, 240 A.3d 658, 661 (Pa. Super. 2020) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order to successfully withdraw pursuant to *Anders*, counsel must: (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, she has determined that an appeal would be frivolous; (2) furnish a copy of the *Anders* brief to the appellant; and (3) advise the appellant that they have the right to retain private counsel or bring additional arguments to the court's attention. *Id*. To confirm client notification has occurred, counsel must provide a copy of the letter advising the appellant of their rights in conformity with *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005). *See B.G.S.*, 240 A.3d at 661.

Our Supreme Court has also set forth substantive requirements for *Anders* briefs, which must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes would arguably support the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. *Id*. (*citing* **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009)). A fully compliant **Anders** brief, therefore, should "articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous." *Id*.

Appellate Counsel submitted both a petition and a brief averring that Mother's appeal is frivolous. Attached to counsel's application is a **Millisock** letter dated April 3, 2025, which properly advised Mother of her right to retain alternative private representation or raise supplemental arguments on her own. **See** Application to Withdraw as Counsel, 4/11/25, at Exhibit B. The letter also indicated that Appellate Counsel would provide Mother with copies of the brief and application to withdraw prior to their filing on April 11, 2025. **See id**. ("I intend to file a Petition for Leave to Withdraw and an **Anders** Brief with the Superior Court on Friday, April 11, 2025. I will meet with you first and deliver your copies of each of those documents."). Thus, the requirements of notice pursuant to **Millisock** are satisfied.

Our review similarly confirms that the **Anders** brief submitted by Appellate Counsel provides an extensive summary of the factual and

procedural history of this matter, which includes citations to the certified record and a recitation of the relevant events in both the dependency and termination proceedings. **See Anders** Brief at 9-18. Furthermore, the brief contains a sufficient discussion of governing Pennsylvania law concerning voluntary relinquishment of parental rights. **See id**. at 19-27.

In her discussion of this issue, Appellate Counsel refers to Mother's sole line of argument on appeal, namely, that she only consented to voluntary relinquishment based upon a mistaken belief that CYS "could terminate her parental rights solely by proving her housing was inadequate due to its size." **Id**. at 22. Mother claims that "she consented under duress, believing she had no other option due to insufficient housing," and that "her misunderstanding rendered her consent conditional, involuntary, and therefore invalid, warranting reversal." **Id**. at 23. Appellate Counsel concludes that this line of argument is, ultimately, frivolous as Mother did not condition her consent to relinquishment upon any such evidentiary factors. **See id**. at 24-27. Indeed, Appellate Counsel emphasizes that Mother "neither questioned nor objected to her capacity to consent or the voluntariness of her decision to terminate parental rights at any point during the proceedings." **Id**. at 27.

As discussed further *infra*, we also note that Appellate Counsel concludes that Mother did not file any appeals with respect to the goal change orders. **See id**. at 17 ("Mother did not file any appeal to the [j]uvenile [c]ourt orders changing each child's permanency goal to adoption.").

Based upon the foregoing, we conclude that Appellate Counsel has complied with the technical and procedural requirements attendant to ***Anders***. Accordingly, we will proceed to review the merits of the issues outlined in her brief while conducting "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***B.G.S.***, 240 A.3d at 662 (*quoting **Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015)). We will begin by assessing the propriety of voluntary relinquishment in the above-captioned cases.

With regard to revocation of consent to adoption in relation to a voluntary relinquishment of parental rights, we review the trial court's determination for an abuse of discretion or legal error. ***In re C.M.C.***, 140 A.3d 699, 704-05 (Pa. Super. 2016). "When reviewing a decree entered by the [o]rphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." ***Id***. at 705 (citation and quotation marks omitted). Furthermore, "[b]ecause the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion." ***Id***. We also remain generally mindful that "where a parent believes that he or she cannot provide adequate care for a child, . . . it would be imprudent for this Court to place impediments in the way of the voluntary relinquishment of parental rights to a child who previously has been adjudicated dependent." ***In re A.J.B.***, 797 A.2d 264, 268 (Pa. Super. 2002).

In basic terms, "[v]oluntary relinquishment deals with the routine relinquishment of . . . orphans by persons who believe they are unable, mentally or physically, to deal with the rigors of raising a child." *In re Adoption of A.M.B.*, 812 A.2d 659, 669 (Pa. Super. 2002). It is well-established that relinquishment is "mutually exclusive" from the distinct legal concept of involuntary termination. *A.M.B.*, 812 A.2d at 666; *see also C.M.C.*, 140 A.3d at 706-10. Voluntary relinquishment of parental rights to an agency is governed by statute. *See* 23 Pa.C.S.A. § 2501. Section 2501 provides:

> **(a) Petition.**--When any child under the age of 18 years has been in the care of an agency for a minimum period of three days or, whether or not the agency has the physical care of the child, the agency has received a written notice of the present intent to transfer to it custody of the child, executed by the parent, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights and duties with respect to their child.
>
> **(b) Consents.**--The written consent of a parent or guardian of a petitioner who has not reached 18 years of age shall not be required. The consent of the agency to accept custody of the child until such time as the child is adopted shall be required.

23 Pa.C.S.A. 2501.

This Court has further explained the relinquishment process, as follows:

> Pursuant to the procedures set forth in Section 2501, the natural parent first files a petition in the trial court seeking permission to permanently relinquish his or her parental rights to the minor child. *See C.M.C.*, 140 A.3d at 708-09. Upon presentation of a petition prepared pursuant to section 2501, the court must schedule a hearing which shall not be less than ten days after filing of the petition. *See* 23 Pa.C.S.A. § 2503(a). The petitioner's appearance at the hearing is mandatory, and the petitioner's

in-court ratification of consent assures due process requirements in view of the finality of the termination decree as to the parent. *See C.M.C.*, 140 A.3d at 709 (*citing* 23 Pa.C.S.A. § 2503(a) cmt.). The purpose of a hearing on a petition for voluntary relinquishment is to [ensure] an intelligent, voluntary, and deliberate consent to the termination of parental rights. *Id*. at 711. The consent given to terminate parental rights voluntarily must be clear and unequivocal. *Id*. After a hearing, which shall be private, the court may enter a decree of termination of parental rights and duties, including the obligation of support, in the case of their relinquishment to an agency. *See* 23 Pa.C.S.A. § 2503(c). **A party seeking to disturb a voluntary termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary, and deliberate.** *See C.M.C.*, 140 A.3d at 711.

*Interest of L.W.*, 2022 WL 17687856, at *3 (Pa. Super. 2022) (non-precedential decision) (emphasis added) (cleaned up).[5]

Mother submitted a waiver and acknowledgement on the day of the involuntary termination hearing that the orphans' court treated like a petition for relinquishment pursuant to Section 2501.[6] *See* N.T., 10/15/25, at 3-4.

_____

[5] In accordance with Pennsylvania Rule of Appellate Procedure 126, this Court may cite non-precedential memorandum decisions for their persuasive value. Pa.R.A.P. 126(b).

[6] The waiver and acknowledgement submitted by Mother did not contain all of the required technical elements of a relinquishment petition. *See* Pa.O.C.R. 15.7(a) (setting forth the "averments" that must be present in a relinquishment petition). Although this Court has disapproved of the failure to file a fully compliant relinquishment petition, it has never found that such a procedural snafu constitutes grounds for reversal. *See C.M.C.*, 140 A.3d at 710-11 (noting that parent failed to file a "written petition to relinquish her parental rights" but ultimately reversing solely based upon the lack of intelligent, voluntary, and deliberate consent). Our reading of the applicable case law indicates that the touchstone of relinquishment cases remains the consent of the petitioning parent. *See id*. at 711 (citing *In re M.L.O.*, 416
*(Footnote Continued Next Page)*

Therein, Mother attested that she was relinquishing her parental rights due to her belief that it was in the "best interest" of the Children. Acknowledgment and Waiver, 10/15/24, at ¶ 3. Mother also explicitly waived the ten-day deliberation period contemplated by Section 2503(a). *See id*. at ¶ 6.

In response to this submission, the orphans' court conducted a thorough colloquy regarding the voluntariness of consent. Therein, Mother indicated that she freely consented to relinquishment and did not wish to contest the termination of her parental rights. *See* N.T., 10/15/24, at 5-8, 10-12. Mother also confirmed that she had been provided with an adequate opportunity to discuss relinquishment with her attorney and fully understood the implications and consequences of relinquishment. *See id*. at 6, 10-11. She specifically averred that she understood that she was giving up the right to contest termination of her parental rights on substantive grounds at an evidentiary hearing. *See id*. at 6-7, 11-12. Mother also attested that her consent was voluntarily given and that she had not been coerced, threatened, or forced to request relinquishment.[7] *See id*. at 7, 10-11. Overall, her testimony reflected that she wished to relinquish her parental rights due to her belief that it was

___

A.2d 88, 90 (Pa. 1980)). As Mother submitted a written waiver and acknowledgment, we will focus upon the voluntariness of her consent.

[7] Mother testified that she had taken prescribed medication for bipolar disorder and anxiety on the day of the hearing and explained that these drugs did not impede her decision-making abilities. *See* N.T., 10/15/24, at 12.

in the Children's best interests for her rights to be terminated. ***See id***. at 7-8, 11-12.

Critically, Mother did not predicate her consent upon the basis that she now asserts, *i.e.*, her belief that the Agency could terminate her parental rights due solely to the lack of appropriate housing. As detailed above, Mother clearly and unequivocally stated her desire and consent to relinquish her parental rights based solely upon her belief that it was in the Children's best interests. ***See id***. at 12-13 ("I really do want the best interest for my kids. I love them very much. Right now I think it is best interest because of where I'm at."). Mother also averred that she was not coerced, forced, or threatened to relinquish her parental rights. ***See id***. at 6-7, 11-12.

It is well-established that the Adoption Act "does not accommodate the hindsight of the natural parent" in relinquishment matters. ***M.L.O.***, 416 A.2d at 90 (citing ***In re Watson***, 301 A.2d 861, 864 (Pa. 1973)). Our Supreme Court has disapproved of attempts by biological parents to second-guess their consent in the absence of any "affirmative indication" that the underlying relinquishment was "unintelligent, involuntary, or unconsidered." ***Watson***, 301 A.2d at 864. With particular reference to Mother's arguments, the High Court has specifically rejected the argument that an alleged "misunderstanding" regarding the law that was not raised during the termination proceedings renders a parent's consent to relinquishment involuntary. ***M.L.O.***, 416 A.2d at 90.

We are convinced, as was the orphans' court, that Mother fully intended to relinquish her parental rights to the Children. As detailed above, our review of the certified record reveals more-than-ample support for the orphans' court's findings pursuant to Section 2501. Since the court's findings with respect to relinquishment are supported by competent evidence, we will not disturb them. **See id**. Therefore, we will affirm the decrees that terminated Mother's parental rights to the Children on a voluntary basis.

We now turn to examine the goal change orders, which Appellate Counsel declined to address in her **Anders** brief. As noted above, Appellate Counsel indicated her belief that Mother had not appealed the juvenile court's goal change orders. **See Anders** Brief at 17. We discern that this oversight was the result of an honest mistake caused by a clerical error that appears in the notices of appeal submitted by Mother with respect to the juvenile court's goal change orders. Although Mother timely filed notices of appeal at each of the dependency dockets, these filings erroneously referred to the "decree" of October 15, 2024, as opposed to the "order" of October 15, 2024. This mere clerical error, however, does not impact the validity of Mother's notices of appeal, which clearly evinced Mother's intent to appeal the juvenile court's respective goal change orders. **See** Pa.R.A.P. 902-903; **Commonwealth v. Williams**, 106 A.3d 583, 587 (Pa. 2014) ("[T]o perfect an appeal from a lower court order, an appellant need only file a notice of appeal with the clerk of the lower court within the applicable time period. . . . A timely notice of appeal

triggers the jurisdiction of the appellate court, notwithstanding whether the notice of appeal is otherwise defective.").

Here, we find that Appellate Counsel's failure to address and consider Mother's goal change appeals in the context of **Anders** was understandable and attributable to the unique circumstances of the instant case. We are also mindful that "substantial compliance" with the mandates of **Anders** may be adequate where this Court reaches its own conclusion that an appeal is wholly frivolous. **Commonwealth v. Kalichak**, 943 A.2d 285, 289 (Pa. Super. 2008). This precedent is particularly applicable if the governing law is "straightforward" for this Court to apply. **Id**. Accordingly, we will proceed to independently examine the propriety of the goal change orders.

As noted above, we have affirmed the decrees that terminated Mother's parental rights to the Children. Under these circumstances, this Court's governing precedent provides that any challenge advanced by Mother regarding the goal change orders is rendered moot. **See In the Interest of D.R.-W.**, 227 A.3d 905, 917 (Pa. Super. 2020) (concluding that a goal change challenge is moot in light of affirmance of a decree terminating parental rights). Furthermore, this Court has also applied this precedent in the context of voluntary relinquishment decrees. **See L.W.**, 290 A.3d at *5 (citing **D.R.-W.**, 227 A.3d at 917). Based upon the foregoing, we conclude that any arguable claim concerning the goal change orders raised by Mother is moot. **See id**. Thus, we discern no non-frivolous arguments regarding the juvenile

court's goal change orders. Accordingly, we will dismiss the appeals from the goal change orders as moot.

Finally, based upon her "substantial compliance" with **Anders** and in light of the absence of any non-frivolous claims, we will also grant Appellate Counsel's petition to withdraw. **Kalichak**, 943 A.2d at 289.

Petition to withdraw granted. Decrees affirmed. Appeals from goal change orders dismissed as moot. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/14/2025